COMMONWEALTH vs. CHRISTOPHER MASONOFF, SR.

No. 06-P-888.

Bristol. February 8, 2007. - September 18, 2007.

Present: GELINAS, McHUGH, & KATZMANN, JJ.

*Practice, Criminal,* New trial, Assistance of counsel, Trial of defendants together.

A Superior Court judge erred in granting a criminal defendant's motion for a new trial on the ground that trial counsel had rendered ineffective assistance by failing to file a motion to sever the defendant's trial from that of a codefendant, where the defendant fell far short of showing that whatever prejudice might have resulted from a joint trial was so compelling that it prevented the defendant from obtaining a fair trial. [165-171]

INDICTMENTS found and returned in the Superior Court Department on January 14, 1982.

The cases were tried before *Paul V. Rutledge*, J., and a motion for a new trial, filed on July 15, 2002, was heard by *David A. McLaughlin*, J.

*Craig A. Souza*, Assistant District Attorney, for the Commonwealth.

*Elizabeth Caddick* for the defendant.

GELINAS, J. After a joint jury trial with a codefendant, James DeCosta, in Superior Court, the defendant, Christopher Masonoff, was convicted of assault and battery by means of a dangerous weapon (a knife); possession of a controlled substance (PCP); and rape, a lesser included offense of aggravated rape.[1] The verdicts were returned on July 26, 1982, and the defendant took no further action with regard to his convictions until fifteen years later. On October 27, 1997, he filed a motion for a free

---

[1]The defendant also was charged with kidnapping. The defendant was not convicted of this charge, but because the record on appeal is not complete, it is not clear whether the charge was decided by a jury or otherwise resolved.

transcript. Eventually, on December 4, 2001, those portions of the trial transcript that were still available were produced (volumes 5, 6, 8, and 9), and about seven months later, on July 15, 2002, the defendant filed a motion for new trial, which is the subject of this appeal. In his motion, the defendant claimed that his trial attorney was ineffective because he (1) failed to file a motion to sever; (2) failed to object to the admission of testimony concerning DeCosta's statement to the police; and (3) functioned under a conflict of interest.

As the trial judge was then deceased, the motion was decided by a second judge, after a nonevidentiary hearing. The judge concluded that the failure of the defendant's attorney to file a motion to sever constituted ineffective assistance of counsel, and on this basis alone, the judge allowed the motion. The Commonwealth has appealed.

We briefly summarize the facts as found by the motion judge, after his review of the available trial record. At about 1:30 A.M., on November 22, 1981, Officer John Gifford stopped a Cadillac automobile in Westport because he saw sparks coming from underneath the vehicle. When he approached the vehicle, the defendant was in the driver's seat, DeCosta was in the front passenger seat, and the victim was seated between the two men. She was undressed, crying, and yelling for help. The officer observed her elbowing the driver and demanding that he let her out of the vehicle.

The victim testified at trial, and her statement to police, which appears to have been consistent with her trial testimony, was admitted as fresh complaint evidence. She said that she had accepted a ride home from a bar with the defendant and De-Costa, but once in the vehicle they did not follow the directions that she gave with regard to the way to her home. At some point, the defendant put a knife to her throat and ordered her to take off her clothes. She hesitated, and the defendant pressed the knife harder against her neck. She complied, and the defendant ordered her to perform oral sex on DeCosta. While she was so engaged with DeCosta, the defendant inserted his fingers in her vagina and stopped the car. Headlights flashed into the car from behind and the defendant drove further down the road. Police lights were activated on the vehicle behind them and the

defendant pulled to the side of the road. Officer Gifford approached the vehicle and observed the scene first described.

Officer Gifford arrested the defendant and DeCosta. Officer Charles Bouchard also arrived at the scene. He testified that he found a knife and a quantity of pills in the vehicle the defendant was driving. Officers Bouchard and Gifford both testified that they each saw a red mark on the side of the victim's neck.

The defendant spoke to Officer Gifford, and the officer recounted the following statement at trial.[2] The defendant said that he had met the victim at a bar and noticed her at the end of the night when she asked for a ride. During the ride, he and the victim began discussing money; after fifty-two dollars came into the conversation, she began removing her clothes. The defendant said they were looking for a place to stop, and pulled over to the side of the road when police lights were activated behind them. The defendant also told Officer Gifford that when the victim saw his buck knife, she removed it from its sheath and threw it to the floor, saying, "I don't want any freaky shit." According to the defendant, when the police lights were activated behind them, the victim said, "I'm not going to get bagged for this," and started crying. The defendant told Officer Gifford that they would find fifty-two dollars on the victim, but she was allowed to go to the restroom before the police checked her person. When she returned, Officer Gifford found between three and four dollars on her person.

Officer Gifford also testified to a written statement given by DeCosta.[3] In the written statement, given at the station after the arrest, DeCosta said that he had fallen asleep after the three had started driving, and awoke when the defendant stopped to urinate. When the defendant got back in the car, DeCosta heard the victim say, "Don't stab me" several times before she began to take off her clothes. He then heard the defendant tell the victim to perform oral sex on him (DeCosta), and she complied, until the police cruiser appeared behind them. DeCosta heard the

---

[2]Counsel for DeCosta objected, and the judge instructed the jury that the statement was limited to the defendant and was not to be considered in assessing the guilt or innocence of DeCosta.

[3]Defense counsel asked for and received an instruction limiting the statement to DeCosta. He did not otherwise object to its admission.

defendant tell the victim to put on her clothes. At trial, Officer Gifford admitted that DeCosta's initial statement to him indicated that the victim did not do anything against her will, but that after a few hours of interrogation, the more inculpatory version as set out above was memorialized in writing by DeCosta.

Officer Paul Holden was present with Officer Gifford when he questioned DeCosta at the police station, and during part of the interview with the defendant. Officer Holden testified at trial that DeCosta's statement was similar to Officer Gifford's account, adding that DeCosta denied seeing a knife.

Officer Gifford also testified that the day after the incident the victim returned to the police station and stated that she wanted to change her statement regarding the incident. She said that she felt sorry for the wives and families of the defendants. Officer Gifford showed her DeCosta's statement, and after reading it, she no longer wanted to change her statement.

At trial, DeCosta testified; his testimony mirrored in all material respects the defendant's statement to Officer Gifford on the night in question. He admitted that the victim had performed oral sex on him, but maintained that it was consensual. He testified that after he was arrested, the police officers told him not to worry because "she was a pro." DeCosta also testified that he had only given an inculpatory statement after he had been held for several hours, and after he had been told that the defendant had blamed him for the incident and that the police "would take it easy on him if he matched his statement to the victim's."

"On the Commonwealth's appeal of the grant of a defendant's motion for a new trial, we consider whether the judge committed a significant error of law or abuse of discretion in allowing the defendant's motion." *Commonwealth* v. *Alvarez*, 433 Mass. 93, 100-101 (2000). See *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). A judge may grant a motion for new trial only "if it appears that justice may not have been done."[4] *Com-*

---

[4]"[T]he words 'justice may not have been done' in [Mass.R.Crim.P.] 30(b)[, as appearing in 435 Mass. 1501 (2001),] address whether justice was done in the defendant's conviction for the underlying offense. The words do not encompass whether, with the benefit of hindsight, any collateral or contingent consequences flowing from the conviction appear to work an unfairness. The collateral or contingent consequences of a conviction, by themselves, do not

monwealth v. *DeMarco*, 387 Mass. 481, 482 (1982). Mass.R. Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). "Judges are to apply the standard set forth in rule 30(b) rigorously and should only grant such a motion if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth." *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 635-636 (2001).

"In a new trial motion asserting ineffective assistance of counsel, whether justice may not have been done equates with whether counsel was constitutionally ineffective. If counsel's ineffectiveness deprived the defendant of an otherwise available substantial ground of defense, . . . then there has been prejudicial constitutional error, . . . and justice has not been done." *Id.* at 636. In reviewing the motion judge's decision, "we regard ourselves in as good a position as the motion judge to assess the trial record," which, in this case, was the sole basis for the judge's decision. *Commonwealth* v. *Grace*, 397 Mass. at 307. *Commonwealth* v. *Hudson*, 446 Mass. 709, 714 (2006).

Here, the Commonwealth challenges the judge's conclusion that counsel was ineffective for failing to file a motion to sever. "In this Commonwealth severance is usually a matter within the sound discretion of the trial judge. . . . Joinder expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice time and energy to serve upon juries, and avoids the necessity of recalling witnesses to successive trials. . . . Such considerations, however, must yield at some point to the rights of the accused. That point is reached when the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial." *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982).[5]

"An ineffective assistance claim based on the failure to bring

---

amount to justice not being done in the underlying proceeding." *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 635 n.8 (2001).

[5]In some instances, aside from compelling prejudice, severance may be constitutionally required by the rule announced by the United States Supreme Court in *Bruton* v. *United States*, 391 U.S. 123, 126 (1968). The *Bruton* Court held that the right under the Sixth Amendment to the United States Constitution to cross-examination is implicated when a codefendant's statement is admitted at a joint trial and the codefendant does not testify. The Court ruled

a motion requires the defendant to show that the motion would likely have been granted." *Commonwealth* v. *Diaz*, 448 Mass. 286, 289 (2007). "The defendant has the burden of showing that prejudice resulted from the failure to sever. . . . Inconsistent trial strategies, hostility among defendants or a defendant's claim that he would have had a better chance of acquittal had he been tried alone do not establish prejudice." *Commonwealth* v. *Miller*, 17 Mass. App. Ct. 991, 992 (1984). Generally, severance will not be granted unless the defenses of the codefendants conflict to the point of being "mutually antagonistic and irreconcilable." *Commonwealth* v. *Moran*, 387 Mass. at 659. *Commonwealth* v. *Diaz*, 448 Mass. at 290. *Commonwealth* v. *Boutwell*, 21 Mass. App. Ct. 201, 208 (1985). Here, the defendant falls far short of showing that whatever prejudice may have resulted from a joint trial was "so compelling that it prevent[ed him] from obtaining a fair trial." *Commonwealth* v. *Moran*, 387 Mass. at 658.

The defenses were neither antagonistic nor mutually exclusive. The incident in question arose out of a single transaction in which both the defendant and DeCosta were alleged to have participated. The Commonwealth's theory at trial was that the defendant, with the aid and assistance of DeCosta, forced the victim at knife point to engage in sex with both of them. This theory did not require either defendant to blame the other in order to escape liability. Contrast *id.* at 656-659, and cases cited therein (evidence showed that at least one defendant, but not necessarily both of them, robbed and killed the victim, leaving each defendant to blame the other to avoid conviction). In fact, not only were their defenses not mutually exclusive, but they also shared a common strategy. See *Commonwealth* v. *Diaz*, 448 Mass. at 290, and cases cited. Both defendants contended that the victim was a prostitute who had been paid to engage in sex with both of them, simultaneously.

To the extent that counsel for DeCosta offered an alternative theory in his summation to the jury, it does not change this

that such a statement is not admissible unless the codefendant takes the stand. *Id.* at 136-137.

In the case at bar, the motion judge properly concluded that there was no *Bruton* violation when DeCosta's statement was admitted in evidence because DeCosta testified.

result. DeCosta's counsel argued that even if the jury credited DeCosta's statement to the police, which was more consistent with the victim's testimony, the evidence was only sufficient to establish the defendant's guilt. He pointed out that the victim testified that it was the defendant "who had a knife, . . . who was driving the car, and who was on the side of [the victim's] body where marks were seen." The argument did not endorse the Commonwealth's theory of the case, but merely acknowledged it. The argument did not create the untenable situation where the "only realistic escape for either defendant was to blame the other," *Commonwealth* v. *Moran*, 387 Mass. at 659, which would have required the trials to be severed. Contrast *id.* at 659-660.

In addition, it is settled that there is no substantial prejudice and that severance is not required if the jury had the option, as here, of disbelieving both defendants and finding guilt based on testimony from witnesses other than the defendants. See *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 853 (1988); *Commonwealth* v. *McAfee*, 430 Mass. 483, 486-487 (1999). In this case, the victim's testimony and police testimony describing the red mark on her neck provided evidence of the crime, independent from the defendant's and DeCosta's versions of the incident. In sum, there was no basis for concluding that the defendant could not obtain a fair trial if the cases were joined, and thus, counsel was not ineffective for failing to file a motion with a minimal chance of success.

We think the motion judge's reasoning to the contrary is unpersuasive. The motion judge concluded that the trial judge would likely have allowed a motion to sever "in order to avoid any potential *Bruton* problems," see *Bruton* v. *United States*, 391 U.S. 123 (1968), because it would not have been clear at the beginning of the trial whether DeCosta would testify. See note 5, *supra*. This speculative rationale can be countered with the assumption that the trial judge was far more likely to exclude the offending statement unless and until DeCosta took the stand, rather than force the Commonwealth and the judiciary to conduct two separate trials, if such concerns were legitimate.[6]

In addition, the motion judge concluded that DeCosta's state-

---

[6]Even had the trial judge considered such a motion, he could have deferred

ment to the police could result in compelling prejudice, and in fact did cause such prejudice, and that had a motion to sever been filed, or an objection to the statement offered, it would have succeeded. The reasoning misapprehends the degree of prejudice that must be shown to warrant separate trials. As noted above, it is not enough that the defendants are hostile to one another or that one defendant would have a better chance of acquittal if tried alone. Rather, the prejudice must be substantial.

Here, there is no doubt that DeCosta's statement did not help the defendant's case, but the defendant has not made an adequate demonstration that he was unduly prejudiced. When the statement was admitted, the judge instructed the jury that it could be applied only to DeCosta. Although the motion judge correctly notes that the *Bruton* Court held that, when a codefendant's statement is admitted in evidence, but the codefendant does not take the stand, a limiting instruction is insufficient to cure the resulting prejudice and deprivation of the right to cross-examination, see *Bruton*, 391 U.S. at 137, nonetheless, in virtually all other circumstances, a limiting instruction will suffice to cure any potential prejudice. See *Commonwealth* v. *Degro*, 432 Mass. 319, 328 (2000). We presume, as we must, that absent any demonstration to the contrary, and we find none, the jury followed the judge's instruction in this case.

The motion judge's assessment of prejudice turns on several additional unwarranted assumptions. He found that trial counsel should have filed a motion to sever because he "[1] should have known prior to trial that the Commonwealth would seek to introduce the damning statement . . . at trial [and] [2] had the trial been severed, the jury would never have heard the content of the codefendant's statement or any reference to it." Neither proposition was certain. The admissibility of DeCosta's statement at the joint trial turned on whether DeCosta testified, a fact that was not ascertainable until the moment he took the stand. Furthermore, there is no guarantee that DeCosta would not have testified for the Commonwealth or the defendant at a

---

his decision until it became obvious that the trial strategies would run afoul of the *Bruton* rule; a motion to sever can be filed at any time during the trial. Smith, Criminal Practice and Procedure § 1051 (2d ed. 1983 & Supp. 2006).

separate trial, rendering his statement potentially admissible.[7]

The motion judge also concluded that DeCosta's statement was highly prejudicial because his trial testimony "was not credible" in view of his completely different and inculpatory story given to police shortly after his arrest. However, because he was not the trial judge, the motion judge's assessment of De-Costa's credibility at trial was not warranted. See *Commonwealth v. Montanino*, 409 Mass. 500, 504 (1991), quoting from *Commonwealth v. Ianello*, 401 Mass. 197, 202 (1987) ("[e]valuations of credibility are, of course, within the exclusive province of the trier of fact"). See also *Commonwealth v. Yesilciman*, 406 Mass. 736, 743 (1990), quoting from *Commonwealth v. Moon*, 380 Mass. 751, 756 (1980) ("[t]he determination of the weight and credibility of the testimony is the function and responsibility of the judge [or jury] who saw the witnesses, and not [the appellate] court").

Moreover, there was substantial evidence adduced at trial that the inculpatory version of events that DeCosta disclosed to police was the product of undue police pressure. Specifically, Officer Gifford admitted on cross-examination that he had interrogated DeCosta for several hours before obtaining the written statement at issue and that during his first conversation with DeCosta, De-Costa said that the victim did not do anything against her will. DeCosta also testified that he only made the inculpatory statement after he had been questioned for hours and the police had promised leniency.

The motion judge's conclusion of compelling prejudice is

---

[7]The motion judge also overlooks the possibility that, independent from any of the concerns discussed herein, a reference to DeCosta's statement may have been permitted on an entirely independent basis. The victim testified that she had gone to the police station to change her story, thereby exculpating the defendant and DeCosta. Upon being engaged in a discussion with police that included the police showing her DeCosta's statement, she decided not to alter her original statement. If the defendant cross-examined the victim about her attempt to change her story at a separate trial, the prosecution may well have been permitted at least to refer to DeCosta's statement, a reference that in these circumstances could have suggested to the jury that DeCosta gave a statement inculpating the defendant. See *Commonwealth v. Errington*, 390 Mass. 875, 881 (1984), quoting from *Commonwealth v. Jackson*, 384 Mass. 572, 584 (1981) ("[t]he evidence was relevant and competent 'to correct any mistaken conclusions the jury may have drawn [about the witness's state of mind] from the defendant's questions as well as to rehabilitate the witness' ").

also undercut by two other considerations. First, the defendant did not complain about the purportedly prejudicial effect of De-Costa's statement until 2002, when, twenty years after the defendant's conviction, he filed this motion for a new trial.[8] While "the mere passage of time does not invalidate a new trial motion," it nonetheless is relevant in evaluating such a motion. *Commonwealth* v. *Wheeler,* 52 Mass. App. Ct. at 636-637. "The presumption of regularity and the principle of finality addressed in [our decisional law] have as much applicability in a proceeding resolved by trial as one resolved by plea." *Id.* at 637. The defendant has not come forward with a "credible indicator that the presumptively proper trial proceeding was constitutionally defective or created a manifest injustice . . . ." *Id.* at 638.

Finally, that DeCosta's statement was not unduly prejudicial is evidenced by the jury's acquittal of the defendant on the kidnapping charge and its return of a verdict of guilty of only the lesser included offense of rape.

*Order allowing defendant's mo-*
*tion for new trial reversed.*

---

[8]Nor is this a defendant who is unfamiliar with the legal system as a means to seek redress of grievances. See *Masonoff* v. *DuBois,* 853 F. Supp. 26 (D. Mass. 1994); *Masonoff* v. *DuBois,* 336 F. Supp. 2d 54 (D. Mass. 2004); *Masonoff* v. *Superintendent, Mass. Correctional Inst., Norfolk,* 46 Mass. App. Ct. 1107 (1999).