Gordon, Robert B., J.
By motion filed on August 23,2013, and supplemented on January 21, 2014, the defendant moves to vacate his plea of guilty pursuant to Mass.R.Crim.P. 30(b), on the grounds that he received an inadequate warning of the possible immigration consequences of his plea (in violation of G.L.c. 278, §29D), and that he additionally received ineffective assistance of counsel. The Commonwealth has opposed the motion on both grounds. For the following reasons, the defendant’s motion is DENIED.
BACKGROUND
On February 18, 2005, the defendant was indicted on one count of distribution of heroin, second or subsequent, in violation of G.L.c. 94C, §32, which carried a minimum mandatory state prison sentence of five years with a possible maximum sentence of fifteen (15) years. Per a plea agreement with the Commonwealth, this charge was reduced to the lesser offense of distribution of heroin and an agreed-upon sentence recommendation of eighteen (18) months in the House of Corrections.[1] With credit for time served, the defendant would serve very little additional time behind bars. On December 11, 2007, a change of plea hearing was held in this Court before then Superior Court (now Appeals Court) Justice Peter W. Agnes, Jr., during which hearing the defendant was represented by then attorney (now District Court Judge) Margaret Guzman.
At the hearing, the Court conducted a full plea colloquy, which included an inquiry into whether or not the defendant was aware of the possible immigration consequences that could result from his guilty plea. Material portions of this colloquy appear below:
THE COURT: I also want you to know if it turns out today that you are not a citizen of the United States your conviction in this case could result in your being deported from this country, it could prevent you from coming back into this country, or it could prevent you from becoming a United States citizen. Do you understand that?
MR. RAMIREZ: Yeah (in English).
THE COURT: And is this something that you talked to Attorney Guzman about?
MR. RAMIREZ: Yeah (in English).
THE COURT: And do you have any questions about the immigration consequences of pleading guilty in this case; what could happen to you in the future?
INTERPRETER SMITH: Well, if I’ve done all my time here, I don’t have any problem with that.
THE COURT: Well, I simply want to be sure you know that by pleading guilty you could be deported from this country, you could be sent out of this country, you could be prevented from coming back into this country, and you could be prevented from becoming a citizen of this country if it turns out that *116 you are not a citizen of this country today. Do you understand that?
MR. RAMIREZ: Yeah (in English).
(Tr. 16-17.)
The Court then asked the defendant if he had any questions for his lawyer about this issue. The defendant answered in the affirmative, and Attorney Guzman and the defendant spoke briefly at the counsel table. After the defendant had conferred with Attorney Guzman, the Court again asked the defendant if he had “any questions about what could happen to you if you are not a U.S. citizen today as a result of pleading guilty that you want to ask your lawyer or [the Court]?” (Tr. 18.) The defendant replied that he did not have any other questions.[2] The Court followed up this inquiry with another question, specifically asking the defendant whether Attorney Guzman had been able to answer his questions regarding the possible immigration consequences of his plea. To which the defendant replied, consistent with his earlier statement that he had no other questions, that she had.
Later in the colloquy, Judge Agnes asked Attorney Guzman if she knew of any reason why the Court should not accept Mr. Ramirez’s guilty plea. Attorney Guzman responded with the following:
Judge, I have to say that I have never had this feeling before. I have an unfortunate feeling regarding the immigration consequences, and I am not satisfied that I have had enough time to discuss and alert Mr. Ramirez about the consequences. I know the Court has done it. I know that he has indicated it. (Tr. 22.)
The Court then asked the defendant directly whether or not he understood “that by pleading guilty, in the future you could be deported from this country.”[3] The defendant replied that he understood. The Court continued, asking the defendant whether he understood that if he left the country or was deported, he could be prevented “from coming back into the country, or... could be prevented from ever becoming a citizen of the United States.” (Tr. 23.) After the defendant indicated that he understood, the Court asked, “And knowing that, do you still want to plead guilty in this case”; to which Mr. Ramirez stated that he did want to plead guilty, even appreciating the possible immigration consequences that had been explained to him. (Tr. 23.)[4]
Based on this change of plea, the Court ultimately found the defendant guilty of the charge of distribution of heroin, in violation of G.L.c. 94C, §32(a). In this connection, the Court stated as follows:
Well, I recognize, and I’ll say for the record, from the defendant’s responses that deportation would appear to be a potential consequence of pleading guilty. But I also believe that I have inquired thoroughly of the defendant about whether he understands that and, knowing that, whether he still wants to go forward, and ultimately it is his decision, as we all know, so long as it’s one that’s made knowingly and voluntarily, and from my observations of the defendant, and knowing the experience of counsel, and the responses of counsel, I’m satisfied that the defendant has made knowing and voluntary waiver of that particular right, and a knowing and voluntary waiver of his right to a trial and a jury trial, and I’m also satisfied that there is a factual basis for his plea of guilty and, accordingly, on the basis of my observations, your answers, sir, and the responses of the lawyers, I find you guilty of the charge of distribution of heroin. (Tr. 24-25).
The Court subsequently accepted the plea, and imposed the recommended sentence of eighteen (18) months’ incarceration at the Worcester County House of Correction (with full credit for time served).
On or around May 10, 2013, while appearing in court to respond to criminal charges of assault and battery and disturbing the peace, the defendant was taken into custody by immigration authorities with the Department of Homeland Security. Mr. Ramirez was thereafter subjected to deportation proceedings, has remained in the Dominican Republic continuously since January of 2014, and now understands that he is permanently ineligible for re-entry into the United States.
On August 23, 2013, having since secured the services of successor counsel in Attorney Rubin, the defendant filed a Motion for New Trial, seeking leave to withdraw his 2007 guilty plea.[5] In his supporting affidavit, the defendant asserted that, before he pleaded guilty, “the Court failed to advise [him] that [he] may experience the consequences of deportation, specifically exclusion from admission to the United States,” and that had he “been adequately advised by the Court of these consequences, [he] never would have voluntarily proffered such a plea.” (Def.’s Aff. ¶¶7~8.) In addition to this affidavit, the defendant submitted documentation regarding the removal proceedings that had been initiated against him by the Department of Homeland Security.[6] The affidavit and supporting submissions all reflect that the defendant’s guilty plea to distribution of heroin had subjected him to removal from the United States pursuant to two provisions of the federal Immigration and Nationality Act.[7]
On December 20, 2013, this Court held a hearing on the defendant’s Motion for New Trial, after which the defendant was afforded leave to brief an additional ground for his requested relief. On January 21, 2014, the defendant filed a Supplemental Motion for New Trial, accompanied by a supplemental affidavit, a Decision of the Board of Immigration Appeals, and a full transcript of his original plea colloquy. As set forth in his supplemental affidavit, at some time prior to *117 January 15, 2014, Mr. Ramirez had been deported to the Dominican Republic.
In his supplemental affidavit, the defendant maintains that, in explaining the immigration consequences of his guilty plea, Attorney Guzman did not tell him that his guilty plea would (i) “definitely make [him] deportable,” (ii) make him ineligible for “any forgiveness or waivers from the Immigration Judge,” and (ill) and make him “permanently ineligible to return to the U.S. with a green card . . .” (Def.’s Sup. Aff. ¶5.) According to the defendant, had he understood that “deportation was not just a possibility, but very likely, and that [he] would never have a chance to come back to the U.S. to live after deportation, [he] wouldn’t have pled.” {Def.’s Sup. Aff. ¶7). Instead, the defendant insists that he “would have taken [his] chances at trial rather than take a plea that didn’t leave [him] any hope to live in the U.S.” {Def.’s Sup. Aff. ¶7.)
According to the defendant, his attorney only warned him that his guilty plea “might make [him] deportable.” (Def.’s Sup. Aff. ¶4.) After having heard the same warning from Judge Agnes, the defendant admitted that he was “worried about that, ” but decided to proceed with the change of plea “so that [he] could get [his] case resolved and move on with [his] life.” (Def.’s Sup. Aff. 14.) The defendant now claims, however, that he “really thought that if [he] did [his] time on this case, [he] wouldn’t have any problems with immigration,” because he “had been to jail before, and [he] never had problems with immigration.” (Def.’s Sup. Aff. ¶6.) As a result of this past experience, the defendant asserts that he “didn’t really understand that being deported and never [being] allowed to come back to the U.S. was something that could really happen to [him].” (Def.’s Sup. Aff. ¶6.)
On March 27, 2014, an evidentiary hearing was held before this Court. The defendant did not appear; but Heather Gedutis (Mr. Ramirez’s girlfriend, and now fiancée, of three years) testified on his behalf regarding the special importance he purportedly attached to remaining in this country. Regarding the testimony of Ms. Gedutis, the Court finds that it is unable to place much reliance upon it. Although Ms. Gedutis presented as a sincere person, it is undisputed that she did not even know the defendant at the time he pleaded guifiy to distributing heroin in 2007. She met Mr. Ramirez for the first time during the summer of 2011, some four years after the relevant events giving rise to the present motion. Ms. Gedutis was thus unable to shed any meaningful light on the defendant’s priorities or overall state of mind at the time he entered into his plea bargain in this case. To be sure, Ms. Gedutis testified that, after receiving notice of his deportation in 2013, the defendant stated to her that he would not have pleaded guifiy had he known that this would happen. But, leaving aside its unreliable hearsay quality, this testimony carries very little weight with the Court. It comes years after the fact (and with the benefit of hindsight), from an unmistakably biased witness (who acknowledged multiple times on the stand that she simply wanted Mr. Ramirez back with her), and with important intervening events casting further doubt on Ms. Gedutis’s credibility — most particularly, Mr. Ramirez’s engagement to marry the witness and his development of positive relations with her two young children.[8]
Viewed in its totality, the evidence put forward by the defendant at hearing did not make a compelling case for the proposition that Mr. Ramirez attached especially high importance to the immigration consequences of his guilty plea. A 1 1/2 page affidavit that presented essentially no factual detail, combined with the testimony of a self-interested witness who did not even know the defendant at the time he tendered the plea (meeting him for the first time some four years later), provide the Court with little basis upon which to credit Mr. Ramirez’s current contention that immigration consequences were so significant to him that he would have rejected a very favorable plea bargain had he been advised about such consequences more completely.
Judge Guzman testified in support of the defendant’s claim that he had not been advised that a guilty plea to a drug felony would mean not a mere possibility — but rather a virtual certainly — that he would be deported and thereafter ineligible for re-entry to the United States. This was simply not the normative counsel that criminal defense lawyers provided to their clients in the pre-Padilla era, and Judge Guzman was candid in acknowledging this deficiency in her advice to Mr. Ramirez. Judge Guzman testified credibly in this regard, and the Court credits such testimony.
Significantly, however, Judge Guzman (who testified to having reviewed what she described as extensive notes, emails and other file materials prior to the hearing) could not corroborate the defendant’s current claim that he attached special significance to his ability to remain in the United States, and would not have tendered his guifiy plea had he known that deportation was certain to be his fate. Indeed, Judge Guzman testified that the pre-trial focus was at all times on the length of the sentence Mr. Ramirez faced, the amount of time he would actually serve, and whether any period of incarceration would be in the State Prison or House of Correction. Immigration consequences were not on the radar. Although she testified that she was confident that immigration consequences were at some point discussed with the defendant, Judge Guzman could not recall any particular conversation with her client about this subject until the brief exchange she had with Mr. Ramirez during the plea colloquy before Judge Agnes. The Court regards this particular gap in the defendant’s evidentiary proffer as significant. Inasmuch as Attor *118 ney Guzman would likely have had insight into the defendant’s decisional calculus regarding the proposed plea bargain given the intimacy of her involvement in the matter, she would have been in a position to testify from first-hand knowledge to any special importance Mr. Ramirez attached to immigration consequences were this in fact the case.[9] She did not do so.
Against this sparse case for Mr. Ramirez having placed special emphasis on the immigration consequences associated with a guilty plea, the Commonwealth introduced substantial evidence indicating that the defendant — and any rational actor — would have accepted the plea agreement he did even if he had been satisfactorily counseled by Attorney Guzman about the inevitable immigration consequences of such a plea. More specifically, Assistant District Attorney Michael McHugh testified to the circumstances surrounding the plea bargain negotiated with Attorney Guzman. ADA McHugh testified credibly that the case against Mr. Ramirez was quite strong, premised on both eyewitness testimony from the undercover officer who engaged in the hand-to-hand drug transaction with the defendant, and corroborative testimony from multiple surveillance officers on the scene. Indeed, ADA McHugh handicapped the likelihood of conviction at as high as 80%.[10]
ADA McHugh further testified that, given the substantial probabilfiy of a guilty verdict and the fact that Mr. Ramirez (in light of his criminal record) faced the potential of a 15-year prison term (and a minimum sentence of no less than five years),[11] a plea agreement that reduced this risk to the certainly of just 18 months in the House of Correction (with little additional time to be served) was a “Christmas present.” Describing the plea bargain as falling at the lenient end of the severily spectrum, ADA McHugh testified that under no circumstances would Mr. Ramirez have been able to secure a better deal. This bargain had been struck on his behalf by a highly skilled and resourceful lawyer, who herself conceded on the witness stand that the bargain was not going to improve. It followed months of pre-trial dealings between the lawyers, came about on the day trial was set to commence, and was by all accounts an extremely favorable result for Mr. Ramirez. Under the circumstances, I find that more accurate disclosure of the immigration consequences of a conviction would not in any way have affected the plea bargaining to Mr. Ramirez’s advantage.
Finally, ADA McHugh testified that, although Attorney Guzman negotiated aggressively, it was evident that her client wanted to plead guilty in order to put this matter behind him. Such testimony echoed Mr. Ramirez’s own affidavit to this effect. By the same token, ADA McHugh testified that he could not recall either Attorney Guzman or the defendant ever giving any indication that special emphasis or significance was being placed on the immigration consequences of a guifiy plea; and this was consistent with Judge Guzman’s testimony as well. It is, of course, possible, as the defendant argues, that a properly advised Ramirez might have weighed the importance of the immigration issue veiy differently (and acted and spoken accordingly). But this argument asks the Court to indulge in speculation without probative evidence, which it declines to do.
As a final point, the evidence at hearing revealed that crediting the defendant’s ineffective assistance of counsel claim and ordering a new trial at this stage would pose unusual burdens upon the Commonwealth. The offense underlying the defendant’s conviction occurred nearly ten years ago. In the interim, critical witnesses have left the government’s employ or are otherwise inaccessible, and the subject heroin sample itself has been destroyed. This would render prosecuting Mr. Ramirez on the distribution of heroin charge a practical impossibility, and thus thwart rather than facilitate justice.
DISCUSSION
I. Standard of Review
“A motion to withdraw guilty pleas is treated as a motion for new trial pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001),” Commonwealth v. Chleikh, 82 Mass.App.Ct. 718, 721-22 (2012). “Under Mass.R.Crim.P. 30(b), a judge may grant a motion for new trial any time it appears that justice may not have been done. A motion for new trial is thus committed to the sound discretion of the judge.” Commonwealth v. Scott, 467 Mass. 336, 344 (2014). “Judges are to apply the standard set forth in [Rule 30(b)] rigorously, and should only grant such a motion if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth.” Commonwealth v. Masonoff, 70 Mass.App.Ct. 162, 167 (2007), quoting Commonwealth v. Wheeler, 52 Mass.App.Ct. 631, 635-36 (2001).
If either “the affidavits or the motion itself raises a ‘substantial issue’ that is supported by a ‘substantial evidentiary showing, ’ ” an evidentiary hearing must be held. Scott, 467 Mass. at 344, quoting Commonwealth v. Stewart, 383 Mass. 253, 260 (1981). “Rule 30(b) encourages judges to make ‘such findings of fact as are necessary to resolve the defendant’s allegations of error of law.’ ” Id. The judge is the “final arbiter on matters of credibility,” to the extent his findings are supported by the evidence. Id., quoting Commonwealth v. Schand, 420 Mass. 783, 787 (1995).
In the present case, the defendant’s rather thin supplemental affidavit left the Court with an abiding doubt as to whether even the low threshold of Rule 30(b) had been cleared. In an overabundance of caution, however, and to afford the defendant every fair opportunity to make the showings a motion for new trial requires, the Court conducted two separate hearings addressed to this matter. Having now completed these hearings, however, it is the Court’s firm conviction that the defendant has not demonstrated grounds *119 for a new trial based on either a defective plea colloquy under Section 29D or ineffective assistance of counsel under Padilla/Sylvain. For the reasons which follow, and based on its considered assessment of all the relevant evidence, it is the judgment of this Court that the defendant would have made the same plea bargain even had he been advised (by Judge Agnes or Attorney Guzman) as he should have been about the immigration-related consequences of same. The evidence strongly preponderates to this conclusion, and to the Court’s related judgment that no rational actor in these circumstances would have spurned the highly favorable plea deal that was tendered to Mr. Ramirez by the government. This clear lack of prejudice to the defendant, particularly when measured against the significant prejudice facing the Commonwealth, is fatal to the defendant’s Motion for New Trial.
II. Challenge to Immigration Warnings During the Colloquy
In his original Motion for New Trial filed on August 23, 2013, the defendant sought leave to withdraw his guilty plea on the ground that he had not been warned about immigration consequences in accordance with G.L.c. 278, §29D. In his accompanying affidavit, the defendant asserted that, before he pleaded guilly, “the Court failed to advise [him] that [he] may experience the consequences of deportation, specifically exclusion from admission to the United States,” and that had he “been adequately advised by the Court of these consequences, [he] never would have voluntarily proffered such a plea.” (Def.’s Aff. SIT7-8.) In his original memorandum, the defendant argued that the failure of the Court to use the specific language quoted in the statute failed to provide adequate notice of the collateral immigration consequences that he faced in pleading guilly. This Court does not agree.
A reading of the plea colloquy transcript demonstrates that the defendant was adequately advised by the Court of the possible immigration consequences confronting him. See Commonwealth v. Lamrini, 11 Mass.App.Ct. 662, 666-67 (1989). Judge Agnes cautioned the defendant repeatedly about the distinct possibility that, as a result of his guilty plea, he could be “deported from this country ...[,] sent out of this country ...[,] prevented from coming back into this country . . . [and] prevented from becoming a citizen of this country ...” There is no explicit requirement that the judge “read directly from the statute” in haec verba so long as the defendant is “sufficiently advised” of the substance thereof. See Lamrini, 27 Mass.App.Ct. at 666-67. Having been plainly so advised, the defendant is not entitled to a new trial on this ground. See id.
III. Ineffective Assistance of Counsel A. The Applicable Standard
In a new trial motion asserting ineffective assistance of counsel, “(j]ustice is not done if the defendant has received ineffective assistance of counsel in deciding to plead guilty.” Commonwealth v. Gordon, 81 Mass.App.Ct. 389, 394 (2012); accord Commonwealth v. Hiskin, 68 Mass.App.Ct. 633, 637-38 (2007). Both the Sixth Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights require effective counsel on the risk of deportation during the plea negotiation process. See Padilla v. Kentucky, 559 U.S. 356, 373-74 (2010); Commonwealth v. Sylvain, 466 Mass. 422, 435-37 (2013). Due process requires that a guilty plea be entered into voluntarily and intelligently. See Scott, 467 Mass. at 345. “[T]o be voluntary and intelligent, the plea must be tendered with a real understanding of its consequences.” Commonwealth v. Murphy, 73 Mass.App.Ct. 57, 61 (2008). Therefore, without the benefit of effective counsel, “a client cannot enter a knowing and voluntary plea.” Chleikh, 82 Mass.App.Ct. at 723.
“In order [to] prevail on his claim for ineffective assistance of counsel, the defendant bears the burden of showing that (1) there has been ‘behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer’ and (2) that ‘it has likely deprived the defendant of an otherwise available substantial ground of [defense].’ ” Sylvain, 466 Mass. at 437, quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Meeting this two-part standard under the Massachusetts Declaration of Rights necessarily satisfies the federal constitutional standard, articulated in Strickland v. Washington 466 U.S. 668, 694 (1984), for evaluating the effectiveness of counsel. See Clarke, 460 Mass. at 45 (2011); see also Marinho, 464 Mass. at 123 n.11 (2013). In point of fact, Massachusetts grants “more expansive protections” under Article 12 of the Declaration of Rights than the protections required of the states under the Sixth Amendment. Id., quoting Commonwealth v. Rainwater, 425 Mass. 540, 553 (1997). These standards stated, the Court will now evaluate the ineffective assistance claim the defendant has made in support of his Motion for New Trial.
B. Whether Counsel’s Actions Fell Measurably Below That Which Might Be Expected From an Ordinary Fallible Lawyer
The defendant claims that his counsel’s failure to properly advise him that pleading guilty would “definitely make [him] deportable,” and that he would be “permanently ineligible” from returning to the United States, fell below the standard for effective assistance of counsel. He argues that these consequences were “virtually mandatory,” and could readily have been determined by a simple review of the relevant immigration statute.
In order to determine whether counsel’s “behavior [fell] measurably below that which might be expected from an ordinary fallible lawyer,” courts reference the applicable professional standards of the legal community. Clarke, 460 Mass, at 45. In Massachusetts, “defense counsel has a duty to provide non-citizen defendants with accurate advice regarding the deportation consequences of pleading guilty or being con *120 victed at trial and that this right also applies retroactively to cases on collateral review.” Sylvain, 466 Mass. at 424. The appropriateness of the advice provided by counsel in this case thus turns, in the first instance, on the certainty of defendant’s deportation. See Chleikh, 82 Mass.App.Ct. at 724-25. As the Supreme Court recognized in Padilla, “[ijmrnigration law can be complex, and it is a legal specialty of its own.” 559 U.S. at 369. “When the law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences.’ ” Gordon, 82 Mass.App.Ct. at 396-97, quoting Padilla, 559 U.S. at 369. However, where the immigration consequences of a guilty plea are “ ‘truly clear . . . , the duty to give correct advice is equally clear’ and competent counsel must give correct advice concerning [those consequences].” Gordon, 82 Mass.App.Ct. at 396, quoting Padilla, 559 U.S. at 369. “It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation[,] and the failure to do so ‘clearly satisfies the first prong of the Strickland analysis. ’ ” Clarke, 460 Mass. at 43, quoting Padilla, 559 U.S. at 368.
In the instant case, the terms of the relevant immigration statute were clear and explicit regarding the consequences of the defendant’s plea of guilty. See Padilla, 559 U.S. at 368; Clarke, 460 Mass, at 46. “Pursuant to 8 U.S.C. §1227(a)(2)(B)(i) (2006 &Supp. Ill 2009), ‘[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, .. . relating to a controlled substance, other than a single offense involving possession for one’s own use of 30 grams or less of marijuana, is deportable.” Jd.[12] Just like the defendant in Clarke, the defendant in the present case pleaded guilty to distribution of a class B substance under G.L.c. 94A, §32A, which made him subject to deportation under 8 U.S.C. §1227(a)(2)(B)(i). See id.; accord Padilla, 559 U.S. at 368 (“counsel could have easily determined” that plea to trafficking in marijuana is a deportable offense under 8 U.S.C. §1227(a) (2) (B) (i)).
The defendant’s plea of guilty also made him subject to deportation under 8 U.S.C. §1227(a)(2)(A)(iii), under which “any non-citizen convicted of an ‘aggravated felony’ is deportable and ‘shall, upon the order of the Attorney General, be removed’ or deported.” Gordon, 82 Mass.App.Ct. at 397, quoting 8 U.S.C. §1227(a). Under this statute, an aggravated felony includes any “illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code).” 8 U.S.C. §1101(a)(43)(B). And “the term ‘drug trafficking crime’ means any felony punishable under the Controlled Substances Act. . .” 18 U.S.C. §924(c)(2). Although “several provisions of the Federal Code must be read in concert. . . the issue is not so complex or confused that a reasonably competent attorney would be uncertain of the consequences of the plea.” See Gordon, 82 Mass.App.Ct. at 398-99 (consequences of guilty plea to aggravated felony of assault and battery on a police officer, while not as obvious as those in Padilla or Clarke, were still “clear and consequential”). Thus, as in the foregoing cases, the defendant’s plea of guilty to the distribution of heroin under G.L.c. 94A, §32A would quite clearly have resulted in deportation proceedings under 8 U.S.C. §1227(a)(2)(A)(iii) as well. See Chleikh, 82 Mass.App.Ct. 718 (“aggravated felony, similar to a drug trafficking conviction, results in deportation proceedings”).
These statutory provisions demonstrate that, in pleading guilty, the defendant “was all but guaranteeing” that he would be subjected to deportation proceedings, and as an aggravated felon, he would thereby be ineligible for cancellation of removal proceedings to allow him to remain in this country. Chleikh, 82 Mass.App.Ct. at 724, citing 1229b(a)(3); accord Gordon, 82 Mass.App.Ct. at 399. Therefore, because the immigration consequences of a guilty plea in this case were “truly clear,” it triggered a duly on the part of defendant’s counsel to give “correct advice [that] is equally clear.” Chleikh, 82 Mass.App.Ct. at 723.
Where the immigration consequences are “clear and consequential,” effective counsel must advise the defendant “appropriately,” which amounts to something more than just a “general warning” that he may be deported. See Chleikh, 82 Mass.App.Ct. at 724 (counsel’s ‘general warning’ may not have met the standard for effective representation). Here, as in Chleikh, the immigration consequences of a guilty plea were “clear and consequential enough” that effective counsel “should have advised the defendant that ‘his deportation was presumptively mandatory,’ . . . and that removal was practically inevitable.’ ” Id. at 725, quoting Padilla, 559 U.S. at 363-64; see also Gordon, 82 Mass.App.Ct. at 398.
In the present case, and by her own admirable admission, Attorney Guzman’s advice to the defendant on the immigration consequences of a guilty plea fell short of this requirement. The first component of an ineffective assistance claim is thus satisfied.
B. Whether Counsel’s Error Prejudiced the Defendant
A deficiency in the advice of legal counsel will not, without more, suffice to warrant a new trial. In order to succeed on an ineffective assistance claim, “the consequences of counsel’s serious incompetency must be prejudicial.” Clarke, 460 Mass. at 46-47. Prejudice in the precincts of ineffective assistance is defined as “a ‘reasonable probability’ that, ‘but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Id., quoting Commonwealth v. Mahar, 442 Mass. 11, 15 (2004) (citation omitted). “In the context of a guilty plea, in order to satisfy the ‘prejudice’ requirement, the defendant has the burden *121 of establishing that ‘there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.’ ” Clarke, 460 Mass. at 47, quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985). The defendant must additionally “convince the court that the decision to reject the plea bargain would have been rational under the circumstances.” Clarke, 460 Mass. at 47, quoting Padilla, 559 U.S. at 372. “Ultimately, ‘[e]ach case will ... stand on its own facts.’ ” Chleikh, 82 Mass.App.Ct. at 729, quoting Clarke, 460 Mass. at 48 n. 19.
(i) Whether there is reasonable probability that, but for counsel’s errors, the defendant would not have pleaded guilty and would have insisted on going to trial.
In order to establish that there is a “reasonable probability that, but for counsel’s errors the defendant would not have pleaded guilty and would have insisted on going to trial,” the defendant must, at a minimum, aver this to be the case. Clarke, 406 Mass. at 47, quoting Hill 474 U.S. at 59-60. Despite his acknowledgment that Attorney Guzman advised him that his guilty plea “might make [him] deportable,” (Def.’s Sup. Aff. ¶4), the defendant asserts that counsel failed to advise him that his guilty plea would “definitely make [him] deportable” and “permanently ineligible to return to the U.S.” (Def. Sup. Aff. ¶5). Had he understood that deportation “was not just a possibility, but veiy likely,” and that he “would never have a chance to come back to the U.S. to live after deportation,” the defendant insists that he “would have taken [his] chances at trial rather than take a plea that didn’t leave [him] any hope to live in the U.S.” (Def.’s Sup. Aff. ¶7.) Thus, in the present case, the defendant bears the threshold burden of establishing that, if his counsel had properly advised him that deportation was a matter of presumption and not a mere possibility, there is a reasonable likelihood (rising to the level of probability) that he would have rejected the plea and insisted upon going to trial. See Clarke, 460 Mass. at 47.
Although the defendant’s affidavit suffices to meet the minimal requirements of the first part of the test for prejudice (viz., averment), the circumstances surrounding Mr. Ramirez’s decision to plead guilty cast doubt on the credibility of his affidavit. See Scott, 467 Mass, at 344 (in motion for new trial, judge is final arbiter on matters of credibility). In the absence of substantial corroborating evidence, this affidavit fails to persuade the Court that the defendant would in fact have made a different decision had he been counseled more completely than he was. See Chleikh, 82 Mass.App.Ct. at 725-29 (although mere “general warning” of immigration consequences fell below standard for effective counsel, defendant unable to demonstrate prejudice).
At the plea colloquy, the Commonwealth put forth probative evidence to establish the defendant’s guilt, which would have left the defendant little prospect of avoiding conviction and its attendant deportation consequences. See Clarke, 460 Mass. at 48; Chleikh, 82 Mass.App.Ct. at 726.[13] This high likelihood of conviction, coupled with the fact that the offer extended by the prosecution reduced what could have been a maximum sentence of fifteen (15) years’ incarceration in state prison to one carrying just eighteen (18) months in the House of Correction (with almost no actual time to be served), would have made the agreement exceedingly attractive to an individual in the defendant’s position. See Chleikh, 82 MassApp.Ct. at 728 (court concluded plea bargain was “very reasonable” under the circumstances and clearly benefitted the defendant).
Moreover, the actions of the defendant in this matter do not appear to be those of an individual especially concerned with the immigration consequences of his plea. See Clarke, 460 Mass. at 48 (record shows “driving factor” was the avoidance of more jail time and warnings of possible deportation “gave [defendant] no pause”); Chleikh, 82 Mass.App.Ct. at 728 (no substantial evidence defendant placed special emphasis on immigration consequences). As ADA McHugh testified, and as even the transcript of the court colloquy reflects, the defendant appeared eager to accept the tendered plea bargain. The defendant displayed no apparent misgivings about the deportation-related risks of a guilty plea, even as those risks were explained to him multiple times by Judge Agnes. See Clarke, 460 Mass, at 49 n.20.[14] Indeed, the defendant seemed impatient with the entire colloquy, providing one-word answers to the judge’s questions in order to move the process forward to its conclusion. Even statements in the defendant’s own post-plea affidavit suggest that, although he considered the possible deportation consequences of a guilty plea, he decided to “take a chance” so that he could get on with his life. See Clarke, 460 Mass. at 48; Chleikh, 82 Mass.App.Ct. at 728. None of this evidence (or anything presented during the hearing) suggests that the defendant made a plea decision that would have been 180-degrees different had he been made aware of the nuanced distinction between a deportation risk that was likely rather than merely possible.
The evidence viewed in its entirety, it is this Court’s judgment that counsel’s failure to advise the defendant that his deportation was not merely possible, but instead presumptive or likely, is too slender a reed on which to rest a conclusion that it would have dramatically altered the defendant’s risk calculus. See id. at 725. This is particularly true when counter-balanced against the substantial likelihood of conviction, the significantly more onerous prison sentence (with considerable time to be served) he would have faced, the fact that conviction at trial carried the identical immigration consequences as a plea, and the evidence that the defendant was repeatedly advised about and actu *122 ally considered the possibility of deportation in his decision to plead guilty. See id. Without additional evidence to substantiate the contention that the defendant placed an extremely high premium on the ability to remain in this countiy, the defendant’s brief affidavit and the two witnesses who testified on his behalf at hearing fail to persuade this Court that Mr. Ramirez would probably have rejected the plea and gone to trial had his counsel informed him of the moderately greater risk that such a plea would in fact result in deportation. See id. This deficiency in the evidence defeats the defendant’s ineffective assistance-based Motion for New Trial.
(ii) Whether rejection of the plea bargain would have been rational under the circumstances.
Even if this Court were inclined to credit the defendant’s self-serving assertion that he would not have pleaded guilty had he been better advised about immigration consequences, and it is not, the defendant must also “convince the court that decision to rej ect the plea bargain would have been rational under the circumstances.” Clarke, 460 Mass, at 47, quoting Padilla, 559 U.S. at 372. In order to satisfy this standard, the defendant bears the “substantial burden” of showing that:
(1) he had an “available, substantial ground of defence” that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time; or (3) the presence of “special circumstances” that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty.
Clarke, 460 Mass, at 47-48 (citations omitted).
In the case at bar, the defendant has not demonstrated to the Court’s satisfaction that he had any “available” or “substantial” defenses to the Commonwealth’s prosecution. To the contrary, the record reflects that the defendant was faced with compelling evidence of his guilt. See id.; Chleikh, 82 Mass.App.Ct. at 726. Even acknowledging the possible existence of certain factual inconsistencies in the reports of the police officers, and Attorney Guzman’s considerable skills as a trial lawyer, there is little in the record to suggest that the Commonwealth would not have carried its burden to prove Mr. Ramirez’s eye-witnessed participation in heroin distribution. ADA McHugh handicapped the likelihood of conviction at something on the order of 80%, and the Court credits that assessment. The substantial defense prong for demonstrating prejudice is thus lacking. See id.
Regarding the second basis for proving prejudice outlined in Clarke, the defendant has not shown that there was a reasonable probability that he could have negotiated a better plea bargain. See Clarke, 460 Mass. at 47; Chleikh, 82 Mass.App.Ct. at 727. “Prejudice may be shown in some cases by establishing that had the defendant and counsel properly understood and considered the deportation consequences of guilty pleas to some charges, counsel likely would have been able to negotiate a plea to other charges that would not have carried such a consequence.” Clarke, 460 Mass. at 47 n.18; see also Padilla, 559 U.S. at 373 (interests of both parties may be better satisfied by bringing deportation consequences into plea bargaining process). However, establishing that such a reasonable probability existed requires more than a statement of intention or speculation as to what the defendant would have attempted to do. See Clarke, 460 Mass. at 47 n.18 (“speculation alone” deemed insufficient to establish reasonable probability that defendant could have negotiated a different plea); Chleikh, 82 Mass.App.Ct. at 727 (no reasonable probability of securing different different plea where defendant merely stated that had he understood consequences of his plea, he would have tried to negotiate a lesser sentence); compare Commonwealth v. Martinez, 81 Mass.App.Ct. 595, 600 (2012) (defendant offered actual evidence that a different plea bargain could have been negotiated).
In the present case, there is no evidence that, had the defendant been better informed of the immigration consequences of a guilty plea, he would have been able to negotiate a more favorable plea bargain. See Chleikh, 82 Mass.App.Ct. at 727-28. Indeed, the hearing evidence is precisely to the contrary. Both ADA McHugh and Judge Guzman testified that the plea deal struck with the defendant — which reduced what could have been a minimum sentence of at least five years’ incarceration in state prison to one canyingjust eighteen (18) months (and very little new time) in the House of Correction — was the absolute best offer that would have been extended by the government under any circumstances. See id. The Court credits this testimony, which it finds persuasive both in its own terms and in light of the significant risk reduction that inured to the defendant in a case where his likelihood of conviction was high. See id.; compare Gordon, 82 Mass.App.Ct. at 400-01 (one-day reduction in sentence that would have saved the defendant from deportation demonstrated reasonable probability that another guilty plea was available).
Moreover, even if there were evidence that a more favorable plea bargain was available (and there is not), it would not have changed the deportation consequences the defendant faced in this case. See Clarke, 460 Mass. at 47 n. 18 (defendant still subject to deportation under 8 U.S.C. §1227(a) (2)(B)(i) even if he could establish availability of a plea of guilty to the lesser included offenses of possession of cocaine and marijuana). For example, even if the defendant had established a reasonable probability that a plea of guilty to the lesser offense of possession of heroin (which is not *123 an aggravated felony under 8 U.S.C. §1227 (a)(2) (A) (ill)) would have been available to him, the defendant still would have been subject to deportation under 8 U.S.C. §1227(a)(2) (B)(i). See Clarke, 460 Mass. at 47 n.18. Under 8 U.S.C. §1227(a)(2)(B)(i), a non-citizen convicted of violating “any law or regulation of a State . . . relating to a controlled substance, other than a single offense involving possession for one’s own use of 30 grams or less of marijuana, is deportable.” Id. Thus, any plea to a lesser offense, as long as it related to heroin, would appear to have been of no benefit to the defendant in terms of the immigration risks confronting him. See id.; cf. Gordon, 82 Mass.App.Ct. at 399-401. This fact significantly undermines the case for prejudice put forward by the defendant.
Finally, in regard to the third theory of prejudice outlined in Clarke, the defendant has not established that there were any “special circumstances” supporting the inference that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether or not to plead guilty. See Clarke, 460 Mass, at 47-48. “Preserving the client’s right to remain in the United States may be more important to the client than any potential jail sentence,” Padilla, 559 U.S. at 368, quoting Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 323 (2001); and courts have provided relief when the defendant puts forward specific facts demonstrating their special connection to the United States. See Chleikh, 82 Mass.App.Ct. at 728-29, citing United States v. Orocio, 645 F.3d 630, 646 (3d. Cir. 2011) (where defendant not warned by counsel of adverse consequences of plea and defendant was “most concerned with remaining in the United States,” rejection of plea bargain would have been rational). For example, specific facts that establish that the defendant has “family in the United States, or extensive ties or connections that might warrant a rational willingness to ‘roll the dice’ and opt for a trial, rather than accept a plea bargain,” might be sufficient to make such a showing. See Chleikh, 82 Mass.App.Ct. at 729.
In the present case, while there is evidence that the defendant has family members living in the United States, the overall record before this Court indicates that the possible immigration consequences of a guilty plea gave the defendant little pause in light of the more pressing concerns confronting him. See Clarke, 460 Mass, at 48 (record suggests “driving factor” in defendant’s decision was avoidance of substantially longer term of incarceration). The evidence at hearing demonstrated that the defendant was single-mindedly focused on reducing his period of incarceration and avoiding time in state prison. Judge Guzman so conceded during the hearing. And, despite the significant number of times that Judge Agnes emphasized the deportation risks associated with a guilty plea, the transcript of the plea colloquy reflects that the defendant at once acknowledged these risks and repeatedly expressed his readiness to accept them in consideration of a plea that assured him a significantly reduced sentence. In other words, the defendant achieved the very objectives that were by all appearances the most important ones to him.
At the end of the day, the defendant “has not shown that it would have been a more rational decision to go to trial, where he was facing a likely conviction, far more committed time, and the same deportation consequences he now faces.” See Chleikh, 82 Mass.App.Ct. at 729. The risk/benefit math does not reasonably allow for such a conclusion. The Court is thus convinced that a rational defendant would have accepted the Commonwealth’s plea bargain even if Attorney Guzman had told him that his deportation and permanent exclusion from the United States were “presumptively mandatory” or “practically inevitable.” See id. at 725, 729, quoting Padilla, 559 U.S. at 364, 368.
Taking all of these considerations together, it is the judgment of this Court that neither this defendant nor any rational actor in the same circumstances would have rejected the Commonwealth’s plea bargain even if he had been more accurately advised about the immigration consequences that would likely follow. Accordingly, even crediting that his attorney never advised him that a guilty plea would make him permanently ineligible to return to the United States, and acknowledging such ineffectiveness of counsel as a matter of law, the defendant has not proven that he was prejudiced in the manner required to grant him a new trial. The second prong of the ineffective assistance of counsel test is thus not satisfied.
C. Consideration of Possible Prejudice to the Commonwealth
As noted ante, a trial court should only grant a motion for new trial under Rule 30b) “if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth.” Masonoff, 70 Mass.App.Ct. at 167 (citation omitted); see also, Murphy, 73 Mass.App.Ct. at 67. ‘The desirabilfiy of finality in the adjudication of cases and the Commonwealth’s interest in the fair and efficient administration of justice are factors to be considered along with the ever-present concern that justice not miscarry for the defendant.” Wheeler, 52 Mass.App.Ct. at 637.
In the present case, the evidence offered at hearing revealed that crediting the defendant’s ineffective assistance of counsel claim and ordering a new trial would pose unusual burdens upon the Commonwealth. The offense underlying the defendant’s conviction occurred nearly ten years ago. See Masonoff, 70 Mass.App.Ct. at 167 (while mere passage of time does not invalidate new trial motion, it is certainly relevant in evaluating such a motion). In the interim, critical witnesses have left the government’s employ or are otherwise inaccessible, and the subject heroin sample itself has been destroyed. This represents serious prejudice to the government. See Commonwealth v. *124 Lopez, 426 Mass. 567, 661 (1998) (loss of record of plea due to lengthy passage of time and fact that reconstruction of colloquy was made impracticable due to retirement or death of judges, court reporters, the unavailability of witnesses and failures of recollection, all considered in denying new trial motion). Because of the age of this case and the loss of essential evidence, prosecuting Mr. Ramirez on the distribution of heroin charge has been rendered a practical impossibility. Allowance of the defendant’s new trial motion would thus thwart rather than facilitate justice. See id.; Wheeler, 52 Mass.App.Ct. at 635-36.
ORDER
For all the foregoing reasons, the defendant has not demonstrated that he was inadequately warned at his plea colloquy pursuant to G.L. 278, §29D or that he was sufficiently prejudiced by an ineffective assistance of counsel. The defendant’s Motion for New Trial is, therefore, DENIED.

The lesser charge of distribution of heroin carried a maximum sentence of 10 years in state prison.

The defendant initially answered the Court by stating “Oh, I understand. Yeah. I understand the risk is that I’m taking to . . . ,” at which point Judge Agnes interjected that he was only asking if the defendant had any questions. (Tr. 18.) After that clarification, the defendant responded that he did not have any questions.

Ñire Court added, “Well, let me ask you, Mr. Ramirez, directly, because it’s your decision. By pleading guilty I cannot tell you that you will be deported from this country, but that you must understand that by pleading guilty, in the future you could be deported from this country.”

Once again, Judge Agnes asked the defendant whether he had any questions that he wanted to ask his lawyer or the Court, to which the defendant responded, “No. No, not really, no." (Tr. 23.) The Court further asked whether the defendant had had time to think about pleading guilty and what might happen to him in terms of deportation consequences, to which, once again, the defendant answered in the affirmative. (Tr. at 24.)

In his accompanying affidavit, the defendant slated that he had been a lawful permanent resident of the United States since he moved here with his parents from the Dominican Republic in 1990, and that he has two children (ages 13 and 17) who were born in the United States.

This documentation included his “Notice to Appear,” his “Warrant for Arrest of Alien,” and a “Notice to EOIR: Alien Address.”

The defendant was subject to removal pursuant to both 8 U.S.C. §1227(a)(2)(A)(iii) (“Any alien who is convicted of an aggravated felony at any time after admission is deportable”) and 8 U. S.C. § 1227(a) (2) (B) (i) (“Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance, other than a single offense involving possession for one’s own use of 30 grams or less of marijuana, is deportable").

Although Ms. Gedutis also testified that the defendant has more siblings in the United States than he does in the Dominican Republic, the testimony of Ms. Gedutis did not paint the portrait of an especially close family. Ms. Gedutis noted that Mr. Ramirez virtually never saw one of his sisters; and the other sister is the sibling who made the police complaint resulting in the defendant’s most recent arrest for assault and battery and disturbing the peace.

When pressed by the Court, Judge Guzman offered the opinion, based simply on her overall sense of the situation, that Mr. Ramirez would have gone forward to trial had he known for certain that deportation to the Dominican Republic would follow his guilty plea. Judge Guzman acknowledged elsewhere in her testimony, however, that she could not say with confidence what Mr. Ramirez would in fact have done with this information, and that she based much of her opinion on the fact that she and her client had been readying their defense right up to the day that trial was to commence. From this fact, Attorney Guzman drew the inference that her client was eager to go forward and put the Commonwealth to its proof — an inference that might suggest that it would not have taken much to tilt Mr. Ramirez away from a plea bargain. The Court believes that, while by no means irrational, such speculation is entitled to no greater weight than a contrary inference that is equally suggested by the facts: viz., that the defendant and his lawyer were readying for trial because the Commonwealth had never extended a plea offer in a case where conviction carried a minimum sentence of five (and a maximum of 15) years’ imprisonment. When an offer was extended on the day of trial that reduced this penally to just 18 months (with very little incremental time to be served once pre-sentence credits were applied), the defendant accepted the plea deal without pause.

Perhaps unsurprisingly, Judge Guzman testified that she was more bullish on her client’s prospects for acquittal, describing the case as “defensible” and crediting Mr. Ramirez with a “real shot” at avoiding conviction. Tellingly, Judge Guzman allowed that she was not contemplating putting on a defense of factual innocence (i.e., a challenge to the identification, an alibi, or the like), but would instead point out inconsistencies in the police officers’ reports of the incident and argue presumption of innocence and reasonable doubt. Her trial strategy thus acknowledged, Judge Guzman conceded that there are always very substantial risks in cases like this one, and that ADA McHugh’s estimation that there could be an 80% probability of conviction was not outside the realm of what a prosecutor might reasonably believe.

Importantly, a guilty verdict at trial would also have produced the same undesired immigration consequences (mandatory deportation) as the guilty plea did. Whatever significance Mr. Ramirez might privately have attached to such consequences, there was no avoiding them without an acquittal on the merits. Given this fact, the likelihood of securing such an acquittal, balanced against the significantly more onerous prison sentence that would accompany conviction, was always the key calculation to be performed by the defendant.

According to 8 U.S.C. §1101(a)(3), the term “alien” means any person not a citizen or national of the United States.

According to the agreed summary of eye-witnessed facts recited, the defendant sold an undercover officer a bag, which was later found to contain heroin. After inquiring about purchasing a “bag,” a street term for heroin, the defendant brought the undercover officer to a separate location where other individuals facilitated a purchase by taking the money, counting it, and then providing the defendant with the heroin. The defendant ultimately handed the heroin himself to the undercover officer. Mr. Ramirez acknowledged these facts as true during the plea colloquy.

Although warnings by a judge are not an “adequate substitute for counsel’s professional obligation to advise her client of the likelihood of specific and dire immigration consequence that might arise from such a plea,” id., they are undeniably relevant to issue of prejudice — that is, the likelihood that the defendant would have made a different decision had he been more properly advised.