## COMMONWEALTH *vs.* KARIM CHLEIKH.

No. 12-P-26.

Middlesex. September 13, 2012. - November 9, 2012.

Present: CYPHER, KAFKER, & KATZMANN, JJ.

*Alien. Constitutional Law,* Assistance of counsel, Plea. *Practice, Criminal,* Assistance of counsel, Plea, New trial.

A District Court judge properly denied a motion to withdraw guilty pleas and vacate convictions, in which a defendant, who was not a United States citizen, argued that his counsel had rendered ineffective assistance by failing to advise him, prior to his pleading guilty, that his convictions would result in deportation, where, even if counsel's advice had fallen short of the standard for effective representation, the defendant did not demonstrate that he had been prejudiced, in that he failed to prove that he had any viable defense, that there was a reasonable probability he could have negotiated a different plea bargain, or that special circumstances supported the conclusion that he would have placed additional emphasis on immigration consequences in deciding whether to plead guilty. [721-729]

COMPLAINT received and sworn to in the Malden Division of the District Court Department on September 20, 2010.

A motion to withdraw pleas of guilty and vacate convictions was heard by *Dominic J. Paratore,* J.

*Patrick A. Michaud* for the defendant.

*Anna Evans,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. In 2011, Karim Chleikh (defendant) pleaded guilty to assault and battery by means of a dangerous weapon, assault and battery, witness intimidation, and threats to commit a crime. A District Court judge sentenced the defendant to two and one-half years in a house of correction, with fifteen months to serve and the balance suspended for two years. Since the defendant is not a United States citizen, his sentence, for at least two aggravated felonies, made it all but certain that he would be deported.

Approximately seven months after the sentencing, the office of the United States Immigration and Customs Enforcement (ICE) of the Department of Homeland Security began deportation proceedings against the defendant. Seeking a new trial, the defendant then filed a motion to withdraw his guilty pleas and vacate his convictions under *Padilla* v. *Kentucky*, 130 S. Ct. 1473 (2010) (*Padilla*), asserting that plea counsel had been ineffective for failing to advise him that his convictions would result in deportation. The District Court judge, who also had been the plea and sentencing judge, rejected the defendant's motion, and the ensuing appeal resulted. Since we conclude that the defendant has not shown that he was prejudiced as a result of his counsel's performance, we affirm the denial of the motion to withdraw guilty pleas and vacate convictions, and for a new trial.

*Background.* On March 23, 2011, the defendant pleaded guilty to the four counts in the complaint against him: assault and battery by means of a dangerous weapon in violation of G. L. c. 265, § 15A(*b*) (count 1); witness intimidation in violation of G. L. c. 268, § 13B (count 2); assault and battery in violation of G. L. c. 265, § 13A(*a*) (count 3); and threats to commit a crime in violation of G. L. c. 275, § 2 (count 4). At the sentencing proceeding that followed the plea colloquy, the Commonwealth requested eighteen months to serve in a house of correction, whereas defense counsel requested six months to serve, which would have amounted to immediate release. After hearing the sentencing recommendations from the prosecution and defense counsel, the judge imposed the following sentences: on count 1, two and one-half years in a house of correction, with fifteen months to serve and the balance suspended for two years; on count 2, two and one-half years in a house of correction concurrent with count 1, with fifteen months to serve and the balance suspended for two years; on count 3, two and one-half years in a house of correction concurrent with count 1, with fifteen months to serve and the balance suspended for two years; and on count 4, six months in a house of correction, concurrent with count 1.

As part of the plea colloquy, the judge gave, in substance, the immigration warnings required by G. L. c. 278, § 29D, see note

3, *infra*, alerting the defendant to the fact that "a conviction, or even an admission to these charges and offenses could subject yourself to deportation."[1] The tender of plea form, which was signed by the defendant, plea counsel, and the judge, indicated that the defendant understood that his plea "may have the consequence[] of deportation" and that plea counsel had explained the defendant's rights to him.

On April 21, 2011, ICE began deportation proceedings against the defendant. An ICE agent issued an immigration detainer, or notice of action, which stated that ICE had begun an "[i]nvestigation . . . to determine whether [the defendant] is subject to removal from the United States."

On September 13, 2011, the defendant, represented by new counsel, filed a "Motion to Vacate Convictions and Withdraw Pleas." The defendant requested that the judge vacate the convictions and grant a new trial, arguing that his plea counsel had been ineffective under *Padilla.*

The defendant affixed an affidavit to his motion in which he avers, in part: "Although the trial court judge gave me a general Immigration Warning, the warning did not include the specific and unavoidable consequences of my plea. It was, therefore, incumbent upon my attorney to explain the consequences of my plea or the plea is not a knowing, willful or intelligent plea in accordance with my Constitutional Rights." In addition, "[i]f I had known that pleading guilty to these offenses and receiving suspended sentences of one year or more were considered Aggravated Felonies, which would make me automatically deportable, I would not have pled guilty. Had I understood the consequences of my pleas, I would have tried to negotiate for suspended sentences of less than one year. If I could not have a negotiated a lesser sentence, I would have been willing to risk a longer sentence at trial in order to stay and avoid mandatory deportation." His affidavit also includes the following background information: the defendant was born in 1981 in

---

[1]In full, the judge stated as follows: "Sir, I must inform you, if you're not a citizen of the United States, a conviction, or even an admission to these charges and offenses, could subject yourself to deportation, exclusion from admission to the . . . United States, as well as denial of naturalization pursuant to the laws of the United States."

Morocco, had been a lawful permanent resident of the United States since 2003, but was not a United States citizen. The affidavit provides neither any additional information as to the defendant's ties to the community nor any details as to potential defenses that he would have raised to the charges against him.

The defendant also included an affidavit in which trial counsel avers, in part: "I have memory of providing Mr. Chleikh a general warning that he *may* be deported from the U.S. as a result of the charges against him, but do not recall providing Mr. Chleikh a specific *Padilla* warning as it was my understanding at that time that his precise deportation status was unclear." Trial counsel also avers that it is his practice to read a client a general waiver of rights that includes a general immigration warning similar to the one provided by the judge under G. L. c. 278, § 29D.

On October 5, 2011, the judge held a nonevidentiary hearing to consider the defendant's motion to withdraw his pleas and vacate his convictions. The judge heard from both parties and took the matter under advisement. On October 19, 2011, he denied the defendant's motion:

> "A defendant such as the present defendant must convince the court that a rejection of a plea bargain would have been rational under the circumstances. The defendant has a substantial burden of showing he had available to him a substantial ground[] of a defense that he would have pursued and was available for him to pursue had he been correctly advised of the collateral consequences regarding deportation as a result of his plea. The affidavit of [trial counsel] indicated that he warned the defendant that he 'may be deported.' Is there a difference between 'may be deported' and 'becomes deportable'? The answer is probably yes. However, the court finds that the defendant has not satisfied his obligation and burden of establishing that he was prejudiced by his plea and that the result would have been any different."

On October 28, 2011, the defendant filed a timely notice of appeal.

*Discussion.* A motion to withdraw guilty pleas is treated as a

motion for new trial pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). *Commonwealth* v. *Rodriguez,* 52 Mass. App. Ct. 572, 581 (2001). We review a judge's decision to deny a motion for new trial "only to determine whether there has been a significant error of law or other abuse of discretion." *Commonwealth* v. *Acevedo,* 446 Mass. 435, 441 (2006), quoting from *Commonwealth* v. *Grace,* 397 Mass. 303, 307 (1986). The judge's ruling "will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error." *Acevedo, supra,* quoting from *Commonwealth* v. *Tennison,* 440 Mass. 553, 566 (2003). A "[r]eversal for abuse of discretion is particularly rare where the judge acting on the motion was also the trial judge." *Acevedo, supra* at 441-442, quoting from *Commonwealth* v. *Lucien,* 440 Mass. 658, 670 (2004).

As previously noted, the defendant's claim for relief is based on ineffective assistance of counsel. The well-established standard for ineffective assistance of counsel in Massachusetts as set forth in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), requires that a defendant show that "there has been serious incompetency, inefficiency, or inattention, of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Thus, a defendant must prove both deficient performance and prejudice. In the Federal context, a defendant must show first that counsel's representation "fell below an objective standard of reasonableness" and then that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *United States,* 466 U.S. 668, 688, 694 (1984). "[I]f the *Saferian* test is met, the Federal test is necessarily met as well." *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985). In the context of representation during a plea negotiation, the Supreme Court has held that in order to demonstrate prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart,* 474 U.S. 52, 59 (1985). The

defendant must aver to sufficient facts to support the conclusion that it would have been reasonable for him to have rejected the plea and gone to trial. *Id.* at 60.

During the plea negotiation process, the Sixth Amendment to the United States Constitution requires that effective counsel advise a client on the risk of deportation. *Padilla,* 130 S. Ct. at 1486. See *Commonwealth* v. *Gordon,* 82 Mass. App. Ct. 389, 396 (2012). Without the benefit of such counsel, a client cannot enter a knowing and voluntary plea. *Padilla,* 130 S. Ct. at 1487. In *Padilla,* the Court recognized that the appropriate advice of counsel depends upon the certainty of the defendant's deportation. The Court held that "when the law is not succinct and straightforward, . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 1483. However, the Court then added that "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Ibid.*

In *Padilla,* the deportation consequences for the defendant were all but certain. Padilla pleaded guilty to the transportation of a large amount of marijuana, and his lawyer told him that he did not need to concern himself with any immigration consequences. *Padilla,* 130 S. Ct. at 1477-1478. However, the relevant immigration statute in *Padilla* was "succinct, clear and explicit" and clearly indicated that Padilla would be deported. 8 U.S.C. § 1227 (a)(2)(B)(i) (2006) ("Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation . . . relating to a controlled substance . . . is deportable"). *Padilla, supra* at 1483.

In the case at bar, the application of the United States Code, namely the section on aliens and nationality, is somewhat more complicated than it was in *Padilla.* Cf. *Commonwealth* v. *Gordon,* 82 Mass. App. Ct. at 399. In pleading guilty to assault and battery as well as assault and battery with a deadly weapon, each of which is a crime of violence that carries a sentence of two and one-half years in a house of correction, the defendant was also admitting to an aggravated felony under the United States Code. 8 U.S.C. § 1101(a)(43)(*F*) (2006) ("The term 'aggravated felony' means . . . a crime of violence . . . for which

the term of imprisonment [is] at least one year"). According to a later section of the code, an aggravated felony, similar to a drug trafficking conviction, results in deportation proceedings. 8 U.S.C. § 1227(a)(2)(A)(iii) (2006) ("Any alien . . . shall, upon the order of the Attorney General, be removed [deported] if the alien is . . . convicted of an aggravated felony at any time after admission"). Thus, combined, these two statutory provisions demonstrate that in pleading guilty to the assault charges, the defendant was all but guaranteeing that ICE could begin deportation proceedings against him. Cf. *Commonwealth* v. *Gordon*, 82 Mass. App. Ct. at 399. Moreover, as an aggravated felon, he would be ineligible for cancellation of removal to allow him to remain in this country. 8 U.S.C. § 1229b(a)(3) (2006).[2] See *Commonwealth* v. *Gordon*, 82 Mass. App. Ct. at 398.

Unlike in *Padilla*, where counsel did not provide the defendant with any warnings about deportation, in the case at bar, counsel provided the defendant with certain cautions. Namely, as reflected in his affidavit, plea counsel provided the defendant with "a general warning that he *may* be deported from the U.S. as a result of the charges against him, but d[id] not recall providing [the defendant] a specific *Padilla* warning as it was [his] understanding at that time that [the defendant's] precise deportation status was unclear." Additionally, counsel provided the defendant with the same warnings that were also provided in court, as mandated by G. L. c. 278, 29D.[3]

"It is quintessentially the duty of counsel to provide her client

---

[2]Section 1229b(a) of title 8 of the United States Code states as follows:

"Cancellation of removal for certain permanent residents

"The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—

"(1) has been an alien lawfully admitted for permanent residence for not less than 5 years.

"(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

"(3) has not been convicted of any aggravated felony."

[3]General Laws c. 278, § 29D, as amended by St. 2004, c. 225, § 1, requires that the judge provide the following warning: "If you are not a citizen of the United States, you are hereby advised that acceptance by this court of your

with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.' " *Commonwealth* v. *Clarke*, 460 Mass. 30, 43 (2011), quoting from *Padilla*, 130 S. Ct. at 1483. Where, as in this case, "the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Padilla*, 130 S. Ct. at 1483. "[T]he issue was clear and consequential enough that effective counsel should have advised the defendant appropriately on this issue before he pleaded guilty." *Gordon*, 82 Mass. App. Ct. at 400. Thus, counsel should have advised the defendant that "his deportation was presumptively mandatory," *Padilla* at 1483, and that removal was "practically inevitable." *Id.* at 1480. See *Gordon, supra* at 398.

There is some ambiguity in the record here as to the extent of counsel's warning, and the parties dispute whether counsel's advice fell short of the standard for effective representation under *Strickland*. We need not and do not resolve this ambiguity or require remand for further factual development because the defendant cannot meet the second prong of the *Strickland* test. As discussed below, we deny the defendant's appeal because he has not demonstrated that he was prejudiced by counsel's representation. See *Clarke*, 460 Mass. at 49 ("We decline to [remand to the trial court] where the defendant has come nowhere near meeting the burden he bears on the issue of prejudice").

In *Clarke*, the Supreme Judicial Court held that in order for a defendant to demonstrate that he was prejudiced by counsel's ineffective representation, the defendant would have to prove that it would have been a rational decision on his part to reject the government's plea bargain and proceed to trial. 430 Mass. at 47. Specifically, the court held that a defendant has the

plea of guilty, plea of nolo condendere, or admission to sufficient facts may have consequences of deportation, exclusion of admission to the United States or denial of naturalization, pursuant to the laws of the United States." See *Commonwealth* v. *Hilaire*, 51 Mass. App. Ct. 818, 826 (2001), *S.C.*, 437 Mass. 809 (2002) (absence of such warning warranted allowing defendant to withdraw guilty plea). "While the receipt of such warnings is not an adequate substitute for defense counsel's professional obligation to advise her client of the likelihood of specific and dire immigration consequences that might arise from such a plea . . . it may be relevant to the prejudice prong of *Commonwealth* v. *Saferian.* . . ." *Commonwealth* v. *Clarke*, 460 Mass. 30, 49 n.20 (2011).

"substantial burden" of proving (1) that he had a substantial defense available to him; (2) that there was a reasonable probability that he could have negotiated a different plea bargain; or (3) that the presence of special circumstances support the conclusion that he would have placed additional emphasis on immigration consequences in deciding whether to plead guilty. *Id.* at 47-48. The defendant must aver sufficient facts to meet his burden and demonstrate that he would have rationally chosen to reject the plea. *Hill,* 474 U.S. at 60. The defendant has not met his burden of providing support for any of these three grounds for relief.

First, the defendant has not demonstrated that he had any available defenses to the Commonwealth's case against him. The Commonwealth put forth substantial evidence at the plea colloquy to establish the defendant's guilt. The Commonwealth noted that at trial, the victim would testify that the defendant pushed her against a wall, punched her in the head, dragged her into the kitchen, and repeatedly slammed her head against a poured concrete floor. The injuries sustained by the victim would have been corroborated by photographs and medical records documenting her injuries. The victim testified in her impact statement at sentencing that she has suffered a brain hemorrhage and seizures as a result of the injuries inflicted by the defendant. Moreover, the victim's testimony would have been corroborated by the arresting police officer. He would have testified that upon arriving at the crime scene, he overheard the defendant threatening the victim and warning the victim not to answer the door. Additionally, once he entered the apartment, the police officer observed the defendant hiding in the closet, with fresh blood on his hands. The defendant, without any prompting, then denied to the arresting officer that he had hit the victim.

Presented with this overwhelming evidence, the defendant has not put forth any evidence of a substantial defense. In his affidavit in support of his motion to withdraw guilty pleas and vacate convictions, the defendant does not aver to any facts that would provide a defense (he only avers that his codefendant was also arrested for assaulting the victim). Moreover, during the plea colloquy, neither the defendant nor plea counsel put forth any evidence of a possible defense. It was only at the

hearing on the motion that the defendant's new counsel briefly stated that "the alleged victim was physically assaulted by another individual, not the [d]efendant."[4] This asserted defense is unpersuasive. While the codefendant (and friend of the defendant) punched the victim in the face, the victim's injuries were not confined to her face. Moreover, the police found the defendant, not his codefendant, alone in the apartment with the victim and with her blood on his hands. Indeed, the fact that the defendant's friend had hit the victim provided a motive for the defendant to be angry at the victim because he believed she had called the police to report his friend.

Given the defendant's failure to provide any viable defense, he cannot secure relief under this theory. See *Commonwealth* v. *Rodriguez*, 52 Mass App. Ct. at 582 (defendant's motion to withdraw guilty plea denied because defendant failed to make any claim of innocence or point to any weakness in government's case).

With respect to the second ground for relief outlined in *Clarke*, the defendant has not proven that there was a reasonable probability that he could have negotiated a different plea bargain. In his affidavit in support of his motion to withdraw guilty pleas and vacate convictions, the defendant avers that "had I understood the consequences of my [pleas], I would have tried to negotiate for suspended sentences of less than one year." However, there is no evidence that there was a reasonable probability that the defendant would have succeeded in negotiating a plea to different charges or a sentence with different deportation consequences. Cf. *Commonwealth* v. *Martinez*, 81 Mass. App. Ct. 595, 600 (2012) (defendant offered evidence "that a different plea bargain could have been negotiated"). See *Padilla*, 130 S. Ct. at 1486 ("Counsel . . . may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence").

To begin with, during the motion hearing, the prosecutor

---

[4]In his brief, the defendant "denies committing any wrongdoing" and again refers to another individual as having committed the assault and battery on the victim.

represented to the judge that given the seriousness of the defendant's crimes, she had been adamant during the plea discussions in rejecting defense counsel's proposal for a finding of guilty to be placed on file. In the final analysis, the judge noted in the sentencing proceeding that the defendant "could have been given far more [months or years], especially after trial." The judge stated that he was "giving [the defendant] some of the benefit of the doubt for pleading out today." The judge added that the Commonwealth, which had recommended an eighteen-month sentence, was "entirely appropriate [in its recommendation] based on the facts." Thus, despite the defendant's claim that he had received ineffective counsel, he benefited from, as the judge observed, a very favorable plea bargain.

This case is unlike *Commonwealth* v. *Gordon*, 82 Mass. App. Ct. at 400-401, where as a result of his guilty plea, the defendant received a one-year sentence that subjected him to deportation proceedings. In *Gordon*, the defendant, not only received faulty advice from his lawyer as to his immigration status, but also would have benefited from just a one-day reduction in his sentence. If the judge in *Gordon* had sentenced the defendant to 364 rather than 365 days, then the defendant would not have been convicted of an aggravated felony and would not have been subjected to automatic deportation proceedings. *Id.* at 401. However, in the case at bar, the defendant has not met his substantial burden of demonstrating that he could have received a different plea agreement. Consequently, we do not grant relief on this ground.

Finally, we consider the third *Clarke* factor: whether the defendant has demonstrated special circumstances that support the conclusion that he would have placed additional emphasis on immigration consequences in deciding whether to plead guilty. In *Padilla*, the Supreme Court reiterated its position that "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." 130 S. Ct. at 1483, quoting from *Immigration & Naturalization Serv.* v. *St. Cyr*, 533 U.S. 289, 323 (2001). See *United States* v. *Orocio*, 645 F.3d 630, 646 (3d Cir. 2011); *State* v. *Sandoval*, 171 Wash. 2d 163, 175-176 (2011) (cited in *Clarke*, 460 Mass. at 48 n.19). Courts have found "special circum-

stances" and provided relief when defendants demonstrate specific facts supporting their connection to the United States. See *United States* v. *Orocio, supra* at 645 (where defendant was not warned by counsel of adverse consequences to pleading guilty, and defendant was "most concerned with remaining in the United States," rejection of plea bargain would have been rational). In the case at bar, however, the defendant has not put forth any facts to warrant a finding that he would have put an additional emphasis on immigration consequences. In his affidavit, the defendant only mentioned that he moved to the United States when he was twenty-two years old. The defendant has not averred that he has family in the United States, or extensive ties or connections that might warrant a rational willingness to "roll the dice" and opt for a trial, rather than to accept a plea bargain. The defendant has not met his substantial burden of proving special circumstances, and we do not grant relief on this ground.

Ultimately, "[e]ach case will . . . stand on its own facts." *Clarke*, 460 Mass. at 48 n.19. "The record in this case suggests that the driving factor in the defendant's decision to plead guilty was the avoidance [of substantially more incarceration]." *Id.* at 48. The defendant has not shown that it would have been a more rational decision to go to trial, where he was facing a likely conviction, far more committed time, and the same deportation consequences that he now faces. Where the defendant has been unable to demonstrate prejudice from his counsel's alleged ineffective representation, we affirm the order denying the motion to withdraw guilty pleas and vacate convictions, and for a new trial.

*So ordered.*