The defendant, Osman Bilal, appeals from the denial, without an evidentiary hearing, of his motion for a new trial by which he sought to withdraw his guilty plea. He also appeals from the denial of two motions to reconsider. Because we conclude the defendant is entitled to an evidentiary hearing, we vacate the orders and remand for proceedings consistent with this memorandum and order.
Background. The defendant is a legal permanent resident (LPR) of the United States. Bilal was born in Somalia in 1992 and lived with his family as a refugee in Saudi Arabia for the next ten years. The family then moved to Syria in 2002, and in 2004, Bilal's parents divorced, and the father returned to Saudi Arabia. The mother, Bilal, and Bilal's siblings were accepted to a United Nations refugee program in 2007 and settled in Boston. After roughly a year in the United States, the mother applied for, and received, LPR status on behalf of herself and her children, including the defendant.
After crashing a dormitory party at Tufts University in 2010, Bilal was charged with larceny under $250 and received nine months of probation. Within the probationary period, Bilal was arrested again after robbing and assaulting a vendor at the Downtown Crossing MBTA station. A witness to the incident told the officers that he had heard the defendant threaten the vendor, while other witnesses helped the police to identify Bilal. When being led away by the arresting officer, Bilal yelled out to the victim, threatening to return and shoot him. Bilal admitted to police that he stole items from the vendor. He was charged with unarmed robbery under G. L. c. 265, § 19 (b ), and witness intimidation under G. L. c. 265, § 13B.
Bilal's counsel (plea counsel) consulted with the Committee for Public Counsel Services (C.P.C.S.) immigration impact unit director, Wendy Wayne, to discuss whether the charges could have immigration consequences for Bilal. Wayne gave plea counsel an intake form to fill out, and the form was returned to Wayne listing Bilal's status as a refugee born in Somalia.[2] Wayne then sent plea counsel an electronic mail message (email) on February 16, 2011, describing in detail how plea counsel should approach the charges in order to give Bilal the best chance at obtaining a waiver for deportable offenses.[3] Plea counsel and Wayne emailed again on March 6, 2011.
Bilal was arraigned the next day. Under a plea arrangement filed on April 4, the felony unarmed robbery charge was reduced to a lesser charge of larceny under $250, a misdemeanor, and the Commonwealth filed a nolle prosequi for the witness intimidation charge. Bilal received one year of probation. The judge certified that plea counsel "informed and advised the Defendant of the immigration consequences of his plea, and in particular, the consequences of deportation, exclusion from admission to the United States, and denial of naturalization."
Some point thereafter, the defendant came to understand that as a LPR, the renewal of his green card would be threatened by his guilty plea. So, on September 23, 2016, the defendant filed a motion to withdraw his plea under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1502 (2001), claiming to have received prejudicial ineffective assistance of counsel from plea counsel regarding advice on the immigration consequences of the plea deal. Specifically, Bilal alleged that plea counsel "quite simply forgot" to determine whether the defendant was a LPR or a refugee, and then structured his plea deal to become eligible for a waiver that was unavailable to LPRs. The motion included an affidavit from Bilal and a statement from plea counsel.[4] Plea counsel's statement provided that "the agreed upon sentence was designed to avoid negative consequences on Mr. Bilal's immigration status," but did not acknowledge that she was aware that Bilal was a LPR. The judge denied the motion on February 7, 2017, concluding that Bilal had not shown that rejecting the plea bargain would have been rational under the circumstances.
On February 21, 2017, the defendant filed a motion to reconsider along with new affidavits from Bilal and appellate counsel. Plea counsel also submitted a sworn affidavit with more detail regarding the advice from Wayne, but again made no mention whether she knew Bilal's real immigration status. This motion was denied on June 9, 2017, because the judge found "no new credible evidence in the [plea counsel's] Affidavit and case filings and no new law or legal argument ...."
On July 21, 2017, the defendant filed a second motion to reconsider that made a new allegation, accompanied by new sworn affidavits from the mother and Attorney Wendy Wayne. The mother's sworn affidavit stated that she informed plea counsel that her son was a LPR at the arraignment on March 7. Likewise, Wayne's sworn affidavit claimed that her notes reflect a call from plea counsel on March 7 informing her that Bilal was a LPR. According to Wayne, plea counsel initially contacted her to seek advice on potential immigration consequences for Bilal. Once plea counsel filled out the intake form indicating Bilal was a refugee from Somalia, Wayne explained to plea counsel the different consequences of each immigration status.[5] When plea counsel called her on March 7, Wayne's "recollection [was] that [plea counsel] was in court with the defendant and his mother when she called me." Wayne stated that she did not have a memory of her response to plea counsel, but her "customary practice" would be to explain the consequences of the charges based on the new information. An email chain between plea counsel and Wayne was submitted, as were Wayne's handwritten notes.[6]
The judge denied the motion without an evidentiary hearing on July 28, 2017, "[rejecting] the assertion that [plea counsel] possessed knowledge and evidence key to her representation of the defendant, but that she withheld that evidence from her client, the Commonwealth, and this Court." The judge did not credit the mother's affidavit, and held that Wayne's affidavit "[did] not bear the weight of the defendant's burden of proof." Wayne's handwritten annotation about the telephone call with plea counsel was also dismissed as "abbreviations and scribbles purporting to represent a communication about the defendant's status."
The order denying the motion for new trial and the orders denying the two motions for reconsideration were consolidated in this appeal. Bilal now argues that the denial of these motions without an evidentiary hearing was an abuse of discretion because the judge's findings were arbitrary and speculative.
Discussion. A motion to withdraw a guilty plea is reviewed as a motion for new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). Commonwealth v. DeJesus, 468 Mass. 174, 178 (2014). "We 'examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion.' Commonwealth v. Grace, 397 Mass. 303, 307 (1986)." Commonwealth v. Lavrinenko, 473 Mass. 42, 47 (2015). While a judge has discretion to deny a new trial on the affidavits, "when the defendant raises a substantial issue of fact, it is the better practice to conduct an evidentiary hearing." Commonwealth v. Martinez, 86 Mass. App. Ct. 545, 550 (2014). In this regard, a judge's discretion "is not boundless and absolute." Commonwealth v. Kolenovic, 471 Mass. 664, 672 (2015), quoting Commonwealth v. Genius, 402 Mass. 711, 714 (1988).
Since Bilal asserts an ineffective assistance of counsel claim, he must prove both that (1) counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer" and (2) the defendant was prejudiced by counsel's performance. Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
a. Counsel's error. In his second motion for reconsideration, the defendant presents the theory that plea counsel had notice that Bilal was a LPR, conferred with Wayne regarding the ramifications of this status, yet structured the plea deal as if Bilal were a refugee. If true, plea counsel's error would satisfy the first prong. "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the Strickland [ Strickland v. United States, 466 U.S. 668 (1984) ] analysis." Commonwealth v. Chleikh, 82 Mass. App. Ct. 718, 724-725 (2012), quoting Commonwealth v. Clarke, 460 Mass. 30, 43 (2011). See Lavrinenko, 473 Mass. at 51.
Notwithstanding the claim, however, the judge found insufficient evidence to support it. While we do not determine the facts of a case, Wayne's sworn affidavit, the mother's sworn affidavit, and the contemporaneous notations by Wayne constitute enough evidence regarding plea counsel's performance to substantiate the need for an evidentiary hearing. While plea counsel's affidavit is silent regarding the alleged interaction with the mother or the follow-up call with Wayne, any tension surrounding plea counsel's account presents a question of fact that warrants an evidentiary hearing.[7]
b. Prejudice. In order to prove that he suffered prejudice by plea counsel's mistake, the defendant must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Clarke, 460 Mass. at 47. The defendant must also prove that rejecting the plea deal would have been "rational under the circumstances." Id.
Clarke enumerates three ways to prove that risking adjudication at trial is rational,[8] but the defendant concedes that two of the three are not applicable to this case. Thus, the success of his motion depends on proof of enough "special circumstances" to warrant the risk of going to trial. "Courts have found 'special circumstances' and provided relief when defendants demonstrate specific facts supporting their connection to the United States." Chleikh, 82 Mass. App. Ct. at 728-729. "[T]here may be a reasonable probability that a defendant would choose to go to trial even without a substantial defense, based on the small chance that the defendant would prevail at trial and avoid deportation." Lavrinenko, 473 Mass. at 59 n.20.
In the judge's decision on the motion for new trial, the judge found special circumstances "not present." Without an evidentiary hearing, it is unclear whether this is true. Although the defendant had only been in this country for four years at the time of his plea, he appears upon the record to have limited ties to his country of birth, Somalia, Saudi Arabia, or Syria. As given in Lavrinenko, the status of refugees are a " 'special' special circumstance," and Bilal came to America via a refugee program. Id. at 59. Again, an evidentiary hearing will allow the defendant to expound upon these ties, and allow the judge to determine their merits, if any.[9]
Therefore we vacate the orders denying the motion for new trial and the two motions for reconsideration and remand the matter to the trial court for further proceedings consistent with this memorandum and order.
So ordered.
Vacated and Remanded.

Bilal "does not remember" discussing his LPR status with his plea counsel, and claims that he most likely told plea counsel that he was a refugee, since that was how he thought of himself. He also may not have been aware that he was an LPR, and acknowledged that he did not carry his green card. We also note that the intake form appears to have initially described Bilal's immigration status upon arrival as "greencard/refugee(?)" and listed his current immigration status as "permanent resident." Those accurate descriptions, however, were apparently scratched out.

Under 8 U.S.C. § 1159(c) (2012), a refugee has an avenue for discretionary relief from removal, so long as the conviction would not constitute "aggravated felonies" with a sentence of a year or more, or a violent crime. See Commonwealth v. Lavrinenko, 473 Mass. 42, 49-50 (2015) ("Where a refugee in removal proceedings obtains a waiver of inadmissibility and adjusts his or her status from refugee to lawful permanent resident, removal proceedings are terminated").

Plea counsel's statement was submitted as an affidavit. However, the judge found that the statement had not been "verified by oath or affirmation before a magistrate" nor "made under the pains and penalties of perjury."

"Upon receiving [the intake form], I sent [plea counsel] the attached email on February 16, 2011 explaining how noncitizens with refugee status are treated differently than those who have adjusted their status to that of LPRs. The email explained that refugees can apply for a refugee waiver for many deportable offenses which allows them to become LPRs and avoids deportation, while those who have already become LPRs do not have access to that relief. I set out in detail how a disposition of these charges should be structured to give a refugee the best opportunity for obtaining that waiver under 8 U.S.C. § 1159(c)."

On a printout of the email exchange from March 6, 2011, there is the following handwritten annotation: "3/7 - T/C D's mo says D is LPR."

We disagree with the Commonwealth's assertion that the affidavits of the mother and Wayne are in "conflict" with plea counsel's affidavit. There is no contradiction between the two, as plea counsel is simply silent regarding whether the mother told her about Bilal's LPR status.

"[T]he defendant bears the substantial burden of showing that (1) he had an 'available, substantial ground of defence' ... that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time; or (3) the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty" (citations and footnote omitted). Clarke, 460 Mass. at 47-48.

If no special circumstances exist, then Bilal's ineffective assistance claim will fail. See Clarke, 460 Mass. at 47-49. If special circumstances are found to exist, however, the judge must then consider whether the totality of the circumstances suggests there is a probability that a reasonable person in the defendant's circumstances would have gone to trial. See Lavrinenko, 473 Mass. at 55, 59.