NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-965

COMMONWEALTH

vs.

SYLVESTER AGYEAH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Sylvester Agyeah, was convicted of resisting arrest in violation of G. L. c. 268, § 32B.  The defendant appeals from the denial of his motion for a new trial after a nonevidentiary hearing.  We affirm.

Background.  The defendant is a citizen of Ghana and has been a permanent resident of the United States since 2013.  The present matter stems from an incident that occurred on April 26, 2018, in Worcester.  On that date, members of the Worcester Police Department were conducting a "john sting," targeting individuals soliciting prostitutes near Loudon Street.  At approximately 9:30 P.M., officers identified and engaged in a struggle with a "john" in the middle of Loudon Street.  As the officers struggled with the john, the defendant approached the

scene in his motor vehicle, caused a "commotion" by "yelling from his vehicle," argued with officers regarding the john's arrest, created "a safety issue" for the officers struggling to arrest the john, and refused several requests to leave the area despite being warned that he would be arrested "for interfering with police and disorderly conduct."  Despite several warnings, the defendant continued to argue with the officers.  Thus, the officers ordered him to exit his vehicle.  The defendant complied, but then "used force to pull away from [the officers] so that he couldn't be placed into handcuffs," "pushed his body back from the car . . . and pulled his arms away from [the officers'] grasps."  After a struggle, two officers "forcibly put [the defendant's] arms behind him," "gain[ed] control of him," and placed him in handcuffs.[1]

The defendant testified at trial and claimed, inter alia, that an officer knocked the cell phone that he was using to record the incident out of his hand and later took it from him; that the officers never asked him to move his vehicle; that he could not leave because his vehicle was blocked in by other

---

[1] The officers were unable to double lock the defendant's handcuffs because he was not compliant.  Also, when walking the defendant to the transport wagon, an officer applied a "wristlock" technique because the defendant "was resisting the efforts to go to the wagon" while he "continued yelling and screaming."  Officers testified that the defendant did not complain of any injuries.

vehicles; that he complied when asked to put his hands behind his back; that an officer twisted his handcuffs, causing him pain and injury to his wrists; and that one of the officers made a disparaging racial remark to him.[2]

The defendant was charged with disorderly conduct, disturbing the peace, resisting arrest, and the common law crime of interfering with a police officer. Aware of the defendant's status as a permanent resident, trial counsel advised his client early in his representation "that a conviction could have immigration consequences," but told the defendant that he "was not an immigration attorney" and referred him to two local immigration lawyers. Following this advice, the defendant spoke with an immigration lawyer after his arraignment who advised him that "if [he] was convicted, [he] could be prevented from applying for United States citizenship for five years."

On May 30, 2019, the day scheduled for trial, the Commonwealth offered to dismiss the resisting arrest charge and decriminalize the disorderly conduct and disturbing the peace charges if the defendant agreed to be found responsible for the

_____

[2] During an August 1, 2022 hearing on the defendant's posttrial motion to present expert testimony, appellate defense counsel represented that the defendant had filed a civil suit in Federal court against the Worcester Police Department. However, that matter is not before us.

3

two civil infractions.  The defendant rejected the offer,[3] and following trial that same day, a jury convicted him of resisting arrest and acquitted him of disorderly conduct and disturbing the peace.[4]  The judge sentenced the defendant to one year of administrative probation that terminated on May 26, 2020.

The defendant filed a motion for a new trial in June of 2022, arguing that trial counsel rendered ineffective assistance in two areas.  First, he argued that trial counsel failed to advise him of the immigration consequences of the Commonwealth's plea offer compared to that of proceeding to trial.  In his accompanying affidavit, the defendant averred that trial counsel did not explain that if he accepted the Commonwealth's offer, there would be "no statutory bar to [his] applying for United States citizenship, but that if [he] was convicted of resisting arrest, [he] could be barred from applying for five years."  Second, the defendant argued that trial counsel failed to present "important evidence implicating the credibility of government witnesses" where the case was a "credibility contest

---

[3] The defendant does not allege that trial counsel advised him to reject the Commonwealth's offer.  To the contrary, the trial transcript reveals that the judge explained on the record that the Commonwealth was "going to dismiss the resisting arrest . . . [and] decriminalize the disorderly, disturbing." Trial counsel acknowledged the offer, stating, "I explained that to my client."

[4] The interfering with a police officer charge was dismissed at the Commonwealth's request with the defendant's consent.

4

between the police and [the defendant]."  The motion judge, who was also the trial judge, denied the defendant's motion after a nonevidentiary hearing.  This appeal followed.

Discussion.  "To prevail on a motion for a new trial claiming ineffective assistance of counsel, a defendant must show that . . . 'behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer,' and that counsel's poor performance 'likely deprived the defendant of an otherwise available, substantial ground of defence.'"  Commonwealth v. Millien, 474 Mass. 417, 429-430 (2016), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  "We review a judge's denial of a motion for a new trial for 'a significant error of law or other abuse of discretion,' granting 'special deference to the rulings of a motion judge who was also the trial judge.'"  Commonwealth v. Alcide, 472 Mass. 150, 158 (2015), quoting Commonwealth v. Forte, 469 Mass. 469, 488 (2014).

1.  Immigration consequences.  The defendant asserts that trial counsel rendered ineffective assistance by failing to inform him that accepting the Commonwealth's offer to dismiss the resisting arrest charge and decriminalize the remaining charges presented no adverse immigration consequences, while a conviction for resisting arrest was "likely to set his

application for citizenship back at least five years."  On the record before us, the argument is unpersuasive.

"[D]efense counsel [has] a duty to inform a noncitizen client that conviction, whether by plea or by trial, may carry adverse immigration consequences."  Commonwealth v. Sylvain, 466 Mass. 422, 436 (2013), quoting Commonwealth v. Marinho, 464 Mass. 115, 125 (2013).  "In determining whether the defendant met his burden under the performance prong of the Saferian standard, we must first address what level of advice [trial] counsel [was] constitutionally required to provide the defendant given the charges against him."[5]  Commonwealth v. Henry, 88 Mass. App. Ct. 446, 452 (2015).  The level of advice required depends upon the certainty of risk that the defendant faces.  When the immigration consequences are "truly clear," then "the duty to give correct advice is equally clear."  Commonwealth v. Chleikh,

---

[5] We reject the defendant's contention that the Commonwealth is estopped from arguing that he did not meet his burden on the "performance prong" of the ineffective assistance test because the Commonwealth conceded the issue below.  Judicial estoppel "precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding" (citations omitted). Commonwealth v. McGilvery, 74 Mass. App. Ct. 508, 509-510 (2009).  However, the doctrine only applies where the party "succeeded in convincing the court to accept its prior position" (citation omitted).  Id. at 510.  Here, the motion judge did not accept the Commonwealth's position on the first prong, but rather concluded that the defendant failed to demonstrate that counsel's performance "fell measurably below that which might be expected from an ordinary fallible lawyer."

6

82 Mass. App. Ct. 718, 723 (2012), quoting Padilla v. Kentucky, 559 U.S. 356, 369 (2010).  However, "when the law is not succinct and straightforward, . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."  Id., quoting Padilla, supra.

Here, it is far from clear that resisting arrest constitutes a "crime involving moral turpitude" such that a conviction would bar the defendant from applying for citizenship for five years for lack of "good moral character."  8 U.S.C. § 1427(a).[6]  The defendant has not identified any legal authority, nor are we aware of any, indicating that resisting arrest is a crime involving moral turpitude.  Contrast Commonwealth v. DeJesus, 468 Mass. 174, 180-181 (2014) (relevant immigration statute "succinct, clear, and explicit" about removal consequences for noncitizens convicted of possession with intent to distribute cocaine).  Rather, the defendant relies on conclusory statements in affidavits unsupported by

---

[6] 8 U.S.C. § 1427(a) requires applicants for naturalization to be of "good moral character" for five years preceding the date of their application.  A person who is convicted of or admits to having committed a "crime involving moral turpitude" is precluded from being regarded as a person with good moral character.  See 8 U.S.C. § 1101(f)(3); 8 U.S.C. § 1182(a)(2)(A)(i)(I).

7

legal authority.[7]  Contrast Commonwealth v. Balthazar, 86 Mass. App. Ct. 438, 442-443 (2014) (defendant cited legal authorities indicating larceny and malicious destruction of property are crimes involving moral turpitude that would subject defendant to "presumptively mandatory deportation").  Where counsel's advice to the defendant -- that a conviction could have immigration consequences and referring him to two immigration lawyers -- was consistent with the requirements of Padilla and its progeny, see, e.g., Chleikh, 82 Mass. App. Ct. at 723, the judge did not err or abuse his discretion when he found that the defendant failed to show the "serious incompetency, inefficiency, or inattention of counsel" required to satisfy the first prong of the ineffective assistance test.[8]  Saferian, 366 Mass. at 96.

---

[7] The defendant's immigration expert, Attorney Valentin, averred in an affidavit that "immigration officials would likely consider the defendant's conviction for resisting arrest to be a 'crime involving moral turpitude,'" but acknowledged that "[t]here is no case law" analyzing the immigration consequences of resisting arrest in violation of G. L. c. 268, § 32B.  The defendant's other immigration expert, Attorney Harrington, averred in an affidavit that "in [his] experience," permanent residents convicted of resisting arrest are "at risk of being denied reentry" to the United States and will not be granted citizenship for "at least five years."  Consistent with this view, in his own affidavit, the defendant averred that an immigration lawyer advised him that if convicted he "could be prevented from applying for Unites States citizenship for five years."  The defendant further averred in his affidavit that he was "told" by some unnamed source that, because of his conviction for resisting arrest, he must wait five years from the end of his probation term to apply for citizenship.
[8] The defendant's trial counsel averred in an affidavit that he advised the defendant that a conviction could have immigration

Even assuming, arguendo, that the defendant satisfied the first prong of the Saferian test, we agree with the judge that he failed to satisfy the second, "prejudice" prong. In the present case, "[h]aving to stand trial, not choosing to waive it, is the prejudice alleged." Lafler v. Cooper, 566 U.S. 156, 163-164 (2012). To establish prejudice in the plea context, "the defendant must demonstrate a reasonable probability that the prosecution would have made an offer, that the defendant would have accepted it, and that the court would have approved it." Marinho, 464 Mass. at 129. As evidence that he would have accepted the Commonwealth's offer, the defendant relies on his statement in his affidavit that he "would never have taken [his] chances at trial" if counsel had explained that accepting the offer would ensure that he was not barred from applying for citizenship for five years. However, the motion judge was entitled "to reject as not credible the defendant's self-serving, conclusory affidavit," see Commonwealth v. Grant, 426

---

consequences but that he was not an immigration attorney. He further averred that he "referred [the defendant] to two local attorneys who practice immigration law." The defendant, in his affidavit, averred that trial counsel told him that he could not advise him of immigration consequences, but "should independently seek the advice of an immigration lawyer." The defendant further acknowledged in is affidavit that he "did talk to an immigration lawyer shortly after [his] arraignment . . . [and] was advised that if [he] was convicted, [he] could be prevented from applying for United States citizenship for five years."

9

Mass. 667, 673 (1998), and here implicitly did so. The defendant, having followed counsel's advice and spoken to an immigration attorney, knew at the time of the plea offer that if he was convicted, his citizenship application could be barred for five years. The defendant did not assert that counsel advised him not to accept the deal, or that he did not understand that a dismissal and decriminalization to civil infractions for the remaining charges did not constitute a conviction. Accordingly, the defendant has met neither prong of the Saferian test, and we cannot conclude that the motion judge's determination "falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

2. Failure to present evidence implicating the credibility of government witnesses. The defendant next contends that trial counsel rendered ineffective assistance by failing to present certain evidence implicating the credibility of the officers' testimony. We disagree.

"Generally, failure to impeach a witness does not amount to ineffective assistance of counsel." Commonwealth v. Norris, 483 Mass. 681, 687 (2019), quoting Commonwealth v. Fisher, 433 Mass. 340, 357 (2001). "[A]bsent counsel's failure to pursue some obviously powerful form of impeachment available at trial, it is speculative to conclude that a different approach to impeachment

10

would likely have affected the jury's conclusion." Fisher, supra. See also Millien, 474 Mass. at 432 (defense "substantial" under prejudice prong of Saferian "where we have a serious doubt whether the jury verdict would have been the same had the defense been presented").

The defendant maintains that counsel could have consulted with and presented testimony by an expert on police use of force and police procedures to demonstrate that the officers' testimony was not credible. The defendant argues that his proposed expert, a retired Connecticut police officer who reviewed the surveillance video footage of the incident, would have been able to discredit the officers' testimony by demonstrating that the defendant's vehicle was blocked in and he was unable to turn around to leave the area of the john's arrest. Even assuming, arguendo, that the defendant's proposed expert testimony would have been admissible, counsel's failure to introduce it was not prejudicial, because the alleged blocking of the defendant's vehicle prior to his arrest would not have undermined or contradicted the evidence that he resisted arrest. The evidence at trial allowed a jury to conclude that, as officers attempted to handcuff the defendant, he "used force to pull away from [the officers] so that he couldn't be placed into handcuffs," "pushed his body back from the car . . . and pulled his arms away from [the officers']

11

grasps."  See Commonwealth v. Don, 483 Mass. 697, 707 (2019) (defendant not prejudiced by counsel's failure "to present expert testimony 'disproving' a particular factual scenario that was not essential to the Commonwealth's theory of the case").

The defendant further contends that counsel was ineffective for failing to cross-examine the officers regarding the surveillance video footage of the incident or their compliance with Worcester police policies.  Trial counsel authenticated and introduced the surveillance video footage of the incident ("Exhibit 2") during the defendant's direct examination. Putting aside whether trial counsel could have introduced the surveillance video footage earlier, such as during cross-examination of the officers,[9] the defendant has failed to demonstrate with any reasoned argument, as opposed to conclusory assertions, how doing so would have influenced the jury's conclusion that he resisted arrest.  Likewise, the defendant has not demonstrated how any alleged violation of Worcester police policies -- e.g., by failing to document the seizure of his cell phone or file a use of force report for the wristlock technique -- would have influenced the jury's conclusion that he resisted arrest.

---

[9] The judge told trial counsel that he would not allow counsel to introduce and authenticate the video footage during cross-examination of the Commonwealth's witnesses.

12

Nor did counsel render ineffective assistance by failing to impeach Officer McGrath with a prior inconsistent statement he made during a July 25, 2018 hearing on the defendant's traffic citation. Officer McGrath testified at the citation hearing that he activated his cruiser's siren and lights when he arrived behind the defendant's vehicle. At trial, he testified that he activated the cruiser's siren, but not the lights. Whether Officer McGrath turned on his cruiser's lights when he approached the scene was inconsequential and unlikely to have influenced the jury's conclusion that the defendant resisted arrest. See Fisher 433 Mass. at 357.

The defendant also argues that trial counsel should have introduced a video recording taken by a rear exterior camera of the police transport wagon because it demonstrated that he appeared to be in pain; that he was cooperative; that officers had an opportunity to double lock his handcuffs before loading him into the wagon; and that two officers were not displaying their police identification. Where the video footage has no audio and shows a limited view of officers loading the defendant into the wagon after they had already handcuffed him, we are not persuaded that playing the video at trial was likely to provide a substantial ground of defense to resisting arrest. Saferian, 366 Mass. at 96. On this record, we cannot say that it was an abuse of discretion to deny the motion for a new trial.

13

Likewise, the defendant's argument that counsel was ineffective for failing to introduce documentary evidence of his injuries is unpersuasive. The medical records are from a hospital visit on May 17, 2018, approximately three weeks after the defendant's arrest, and the photographs the defendant took of his wrists lack date or time stamps.[10] Moreover, both officers testified that it is common for individuals to experience pain while handcuffed and explained that an arrestee being noncompliant makes it "impossible" to double lock handcuffs to prevent further tightening. In short, we cannot conclude that the defendant was deprived of a substantial ground of defense, and we have no "serious doubt whether the jury

---

[10] The only indication of the date each photo was taken is the defendant's averment that he took them on May 3, 2018, and May 14, 2018, several days after his arrest on April 26, 2018.

14

verdict would have been the same" in the absence of counsel's claimed failures.  Millien, 474 Mass. at 432.[11]

Order denying motion for a
new trial affirmed.

By the Court (Neyman,
Desmond & Smyth, JJ.[12]),

Clerk

Entered:  August 7, 2023.

---

[11] We are likewise unpersuaded by the defendant's argument that the judge abused his discretion by denying the motion without conducting an evidentiary hearing.  The judge is not required to conduct an evidentiary hearing unless the defendant raises a "substantial issue."  Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001).  "If, on the papers presented, the basis of the motion is not 'credible' or 'persuasive,' an evidentiary hearing accomplishes nothing."  Commonwealth v. Candelario, 446 Mass. 847, 859 (2006), quoting Commonwealth v. Goodreau, 442 Mass. 341, 348-349 (2004).  For the reasons discussed supra, "the judge's finding that the defendant[] . . . did not raise a substantial issue is entitled to substantial deference, . . . and the judge could properly use his knowledge and evaluation of the evidence at trial in determining whether to decide the motion for a new trial without an evidentiary hearing" (citation omitted).  Commonwealth v. Amaral, 482 Mass. 496, 509 (2019).  To the extent that we have not specifically addressed subsidiary arguments in the parties' briefs, they have been considered, and do not warrant further discussion.  See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[12] The panelists are listed in order of seniority.